1  J. MICHAEL KALER, SBN 158296
2  9930 Mesa Rim Road, Suite 200
   San Diego, California 92121
3  Telephone (858) 362-3151
   Email: michael@kalerlaw.com
4

5  MELODY A. KRAMER, SBN 169984
6  9930 Mesa Rim Road, Suite 1600
   San Diego, California 92121
7  Telephone (858) 362-3150

8  Attorneys for Plaintiff JENS ERIK SORENSEN,
9  as Trustee of SORENSEN RESEARCH AND
   DEVELOPMENT TRUST
10

11            UNITED STATES DISTRICT COURT

12        FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

15  JENS ERIK SORENSEN, as Trustee of    )  Case No. 08-CV-0095 JW RS
    SORENSEN RESEARCH AND                 )
16  DEVELOPMENT TRUST,                    )
                                          )  **PLAINTIFF'S OPPOSITION TO**
17                                        )  **MOTION FOR STAY PENDING**
                          Plaintiff,      )  **REEXAMINATION**
18       v.                               )
19                                        )  Date: May 5, 2008
    LEXAR MEDIA, INC., a Delaware         )  Time: 9:00 A.M.
20  Corporation; and DOES 1 – 100,        )  Courtroom 8, 4th Floor
                                          )  Judge: The Hon. James Ware
21                                        )
                          Defendants.     )
22                                        )  *Oral Argument is Respectfully Requested*
                                          )  *at Hearing on This Matter*
23                                        )
                                          )
24                                        )
                                          )
25                                        )
                                          )
26  ──────────────────────────────        )

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

SUMMARY OF OPPOSITION ........................................................................ 1

FACTUAL SUMMARY ................................................................................. 1

ARGUMENT ................................................................................................. 3

I.    LEXAR'S REQUEST FOR STAY SHOULD BE DENIED AS THE FACTS ARE
      DISTINGUISHABLE FROM THE *BLACK & DECKER* CASE ........................... 4

II.   PLAINTIFF WOULD BE UNDULY PREJUDICED AND TACTICALLY
      DISADVANTAGED BY A STAY ........................................................... 4

      A.    *Ex Parte* Reexaminations Can Be Expected to Extend for Five
            Years or More, Rather than 19-24 Months ................................. 5

            1.    A closer look at   PTO data shows the current length
                  of reexamination proceedings to be far longer than
                  24 months ......................................................... 6

            2.    Five-plus year reexaminations undermine congressional
                  intent for use of the reexamination process. ................. 8

            3.    Lengthy reexamination proceedings also undermine the
                  intent of the Local Patent Rules. ............................. 10

            4.    Caselaw supporting liberal grants of litigation stays pending
                  the completion of reexamination proceedings are inapposite. ........ 10

      B.    Plaintiff Would Be Prejudiced Through The Inability To Identify
            and Serve All Proper Defendants. .......................................... 13

      C.    Plaintiff Would Be Prejudiced Through The Loss Of Evidence. ................ 14

III.  DEFENDANT IS ESTOPPED FROM CLAIMING HARDSHIP REQUIRING A
      STAY BY ITS COUNTERCLAIM FOR DECLARATORY RELIEF ................. 15

CONCLUSION ............................................................................................. 17

Case No. 07-CV-02321

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461 (1937) ................................. 16

*American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224 (9th Cir. 1988) ......................... 16

*ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378 (N.D. Cal. 1994). ....... 11

*Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155

(E.D. Texas, 2008)  ............................................................................................ 13

*Danis v. USN Communs, Inc.,* 2000 U.S. Dist. LEXIS 16900 at *4-5. ........................... 14

*Ethicon Inc. v. Quigg*, 849 F.2d 1422 (Fed.Cir. 1988)  …………………………………11

*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.* 2007 WL 1655625
(N.D. Cal. 2007)  ................................................................................................ 3

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953

(Fed.Cir.1987)  ............................................................................................ 15

*Gould v. Control Laser Corporation*, 705 F.2d at 1342, 217 USPQ at 986 ..................... 11

*Hughes v. Vanderbilt University* 215 F.3d 543, 549 (6th Cir., 2000) ............................. 16

*IMAX Corp. v In-Three, Inc.,* 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005)……………15

*In re Fordson Engineering Corp.,* 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). ............... 16

*Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D. Cal. Sept. 27, 2005) ..................... 4

*Landis v. North Am. Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)……...15

*Madden v. Wyeth*, 2003 U.S. Dist. LEXIS 6427. .............................................................. 14

*Medichem, S.A. v. Rolabo, S.L.,* 353 F.3d 928, 936 (Fed.Cir.2003) ................................. 12

*MedImmune, Inc. v. Genentech, Inc.,* U.S., 127 S.Ct. 764 (2007) ................................... 15

*MercExchange, L.L.C. v. eBay, Inc.,* 500 F.Supp.2d 556 83 U.S.P.Q.2d 1688
(E.D.Va. Jul 27, 2007) ..................................................................................................... 13

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, (E.D.Va.2005). ................. 12

*Patlex Corp. v. Mossinghoff,* 758 F.2d 594 (Fed.Cir.1985) ............................................. 12

*Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986) ............................................. 16

*Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.* 497 F.3d 1271 (Fed.Cir. 2007) ............................................................................................... 15

*Soo Line R. Co. v. St. Louis Southwestern Ry.,* 125 F.3d 481 (7th Cir. 1997) ................... 16

*Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660 (E.D.Tex.2005) ...................................................................................................... 3

*Telemac Corp. v. Teledigital, Inc.,* 450 F.Supp.2d 1107 (N.D.Cal. 2006)....................... 15

*Treppel v. Biovail Corp.,* 233 F.R.D. 363 (2006)............................................................ 14

*Viskase Corp. v. American Nat. Can Co.,* 261 F.3d 1316 (Fed. Cir. 2001). ...................... 4

*White v. Arco/Polymers, Inc.,* 720 F.2d 1391 (5th Cir.1983)........................................... 16

## Statutes

28 U.S.C § 2201 ............................................................................................... 15

35 U.S.C. § 305 ............................................................................................... 8

## Rules

Fed.R. Civ.P, Rule 15(c).................................................................................. 13

## Secondary Sources

H.R. REP. No. 96-1307 pt. 1, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463. ..8

Case No. 07-CV-02321

1

## SUMMARY OF OPPOSITION

2      The Court should deny Defendant Lexar Media, Inc's ("Lexar") Motion for
3   Stay on the grounds of a pending patent reexamination because (1) such a stay would
4   most likely extend for approximately five years, creating a substantial likelihood of
5   prejudice to Plaintiff Sorensen Research and Development Trust ("SRDT"); (2)
6   SRDT would be prejudiced through inability to identify and name necessary
7   defendants and preserve evidence; and (3) Defendant's counterclaim for declaratory
8   judgment creates estoppel against Defendant's request for delay.

9      Lexar's  Motion for Stay (Docket # 12) is a boilerplate request for stay based
10  on two reexaminations of the '184 patent filed by defendants in *Sorensen v. The*
11  *Black & Decker Corporation, et al.,* Case No. 06CV1572 in the Southern District of
12  California ("Black & Decker case") and an order for stay issued in that case.

13     Since the issuance of stay in the Black & Decker case, SRDT has learned that
14  the approximate duration of patent reexaminations has dramatically increased in the
15  past few years from an average of 19-24 months (the span argued by Lexar to the
16  Court) to a typical time period closer to five years than to the two years relied upon
17  by Lexar.

18     In light of this new data, a litigation stay pending reexamination is
19  inappropriate because it would completely undermine the entire original purpose of
20  the reexamination process – to allow a prompt forum for review of the validity of a
21  patent.  It also undermines the intent and purpose of the Local Patent Rules for
22  streamlined patent litigation.

23

## FACTUAL SUMMARY

24

25     SRDT and Defendant exchanged communications regarding the patent
26  infringement allegations that form the basis of this action beginning on April 16,
27  2005, very shortly after SRDT first learned that Lexar products appeared to infringe
28  U.S. Patent No. 4,935,184 ("the '184 patent").  The parties continued communicating

1.

1    with regard to their differences for more than two years, but amicable negotiations

2    failed to resolve the dispute.  After the parties were unable to achieve resolution

3    without litigation, this action for patent infringement was filed January 7, 2008.

4    Lexar filed an Answer and Counterclaim for declaratory relief on March 12th,

5    followed by the filing on March 13th of the pending Motion for Stay.

6        *Status of '184 Patent Reexaminations.*  In the Black & Decker case, patent

7    infringement defendant Black & Decker filed an Ex Parte Request for

8    Reexamination of the subject '184 patent with the United States Patent and

9    Trademark Office ("PTO") in July 2007 ("1st reexamination") and, on that basis,

10   obtained an order staying the Black & Decker case, ("Black & Decker Order"),

11   which issued on September 10, 2007.  Now, nine months after the filing of the

12   reexamination request, the first office action for the 1st reexamination has not yet

13   issued, despite SRDT's attempts to shorten the reexamination process by declining to

14   file an optional patent owner's statement, to shave approximately two months from

15   the reexamination process.  *Kramer Decl.* ¶ 4.

16       Co-defendants in the Black & Decker case - Phillips Plastics and Hi-Tech

17   Plastics – waited until December 21, 2007 to file a second third-party reexamination

18   request ("2nd reexamination"), which the PTO has recently accepted.  *Kramer Decl.* ¶

19   5.  The 2nd reexamination was filed very shortly after expiration of the deadline for

20   filing of a patent owner's statement, when it became clear that Black & Decker

21   would not have a second opportunity to brief the 1st reexamination.

22       The stay of the Black & Decker lawsuit was based upon the Court's belief that

23   the average length of reexaminations was then 18-23 months (see Docket #243, p.

24   7:19-21 in the Black & Decker case).

25       Beginning in February 2008, informal information obtained from the law firm

26   representing Phillips Plastics and Hi-Tech, and a well-publicized patent being

27   enforced by a client of Black & Decker's counsel, led to the conduct of a closer

28   analysis of PTO reexamination data.

1
2
3
4
5
6
7
8
9
10
11

That closer analysis shows that the 19-24 month period[1] most recently cited by Lexar and the PTO as typical for reexamination completion is an average of all reexaminations filed in the 28 years since 1981.  When one eliminates the older data and conducts the analysis only on reexamination filings in more recent years, it becomes apparent that the phenomenal growth in reexamination filings since 2002 vastly exceeds the PTO's current pace for processing reexaminations.  As a natural consequence, the backlog of pending reexaminations has grown to approximately a five-year supply and application growth continues to outpace all efforts by the PTO to accommodate the increased workload.  This data leads to the conclusion that the current, average timeframe for completion of a reexamination filed after 2006 is approximately five years and continuing to grow.  *Kramer Decl.* ¶ 6.

12
13

## ARGUMENT

14
15
16
17

"A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze.  [cites omitted]" *Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.* 2007 WL 1655625 (N.D. Cal. 2007).

18
19
20
21

"There is no *per se* rule that patent cases should be stayed pending reexaminations, because such a rule '**would invite parties to unilaterally derail' litigation**."  *Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005), quoted in *Fresenius, supra.*

22
23
24
25

Lexar seeks to derail this litigation by arguing *per se* entitlement to a stay based upon the existence of reexamination proceedings and the *Black & Decker* stay.  That argument fails because updated information regarding the average duration of

26
27
28

---

[1] Lexar's 19-24 month average comes from a December 2007 quarterly PTO report. In the Black & Decker case, the Court relied upon the June 2006 version of the same report. Even the PTO's averages since 1981 have shown a marked increase even within that brief intervening time period.

1
2
3

reexaminations challenges the assumptions under which that stay was issued and the underlying rationale for the issuance of stays pending completion patent reexaminations.

4
5

I.    LEXAR'S REQUEST FOR STAY SHOULD BE DENIED AS THE FACTS ARE DISTINGUISHABLE FROM THE *BLACK & DECKER* CASE.

6
7
8

The court is not required to stay judicial resolution of a patent case in view of reexaminations.   Whether to stay is entirely within the discretion of the Court. *Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

9
10
11

A court must weigh the parties competing interests **as presented by the specific facts of the case at bar**.   *Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D. Cal. Sept. 27, 2005) (emphasis added).

12
13
14
15
16

This motion is materially different from the Black & Decker situation in at least three key respects: (1) the Court now has more accurate information regarding the expected duration of reexamination proceedings; (2) there was no extensive delay between initial contact by the Plaintiff and filing of this suit; and (3) Lexar herein filed a counterclaim; the Black & Decker defendants did not.

17
18
19
20
21
22
23

A stay that will extend to approximately five years, far longer than the parties' awareness of a dispute, is excessive.  Lexar's counterclaim for declaratory relief has the purpose of providing the allegedly infringing party with relief from delay in resolution.  Lexar's counterclaim alleges that: "an actual and justiciable controversy of sufficient immediacy exists."   Lexar's assertion that the controversy is "of sufficient immediacy" is a request for judicial resolution incompatible with its request for entry of a stay that will likely extend for approximately five years.

24
25

II.   PLAINTIFF WOULD BE UNDULY PREJUDICED AND TACTICALLY DISADVANTAGED BY A STAY.

26
27
28

A new analysis based on PTO statistical data shows that the likely duration of a recent *ex parte* reexamination proceeding is approximately five years, not just the

4.

1    two years that the PTO publishes is the average over the last 28 years. Such a
2    lengthy stay undermines the congressional intent for implementation of the
3    reexamination process, and also undermines the Local Patent Rules. Furthermore,
4    this extensive delay would prejudice the Plaintiff through inability to identify and
5    serve all appropriate defendants and inability to locate and preserve necessary
6    evidence and record witness testimony.

7    Thus, Plaintiff would be unduly prejudiced and subjected to a clear tactical
8    disadvantage by a complete stay of this case pending completion of two *ex parte*
9    reexamination proceedings before the PTO.

A.    *Ex Parte* Reexaminations Can Be Expected to Extend for Five Years or More, Rather than 19-24 Months.

12    Defendant's Motion for Stay relies on this Court's order to stay the related
13    '184 patent infringement case against Black & Decker. The Black & Decker Order
14    was based on statistical data from the PTO's office that has since been shown to be
15    obsolete. The flaw in the PTO's published reports arises from inclusion of all
16    completed reexaminations filed since 1981 and exclusion of the statistical impact of
17    reexaminations that are not yet completed. This approach creates a systemic bias as
18    the weight of early results in the average, coming from a time when there were far
19    fewer reexamination requests and the PTO was able to process them quickly,
20    conceals the impact of the great increase in pendency delay that has occurred in the
21    past five years.

22    The closer look at PTO data that is explained herein was prompted by
23    information obtained directly from or related to counsel for the Black & Decker
24    defendants. The February 2008 issue of the San Diego Intellectual Property Lawyers
25    Association ("SDIPLA") contained a reference to a newsletter from Hal Wegner,
26    partner at Foley & Lardner, the law firm representing Black & Decker case
27    defendants Phillips Plastics and Hi-Tech Plastics.

5.

1
2
3

The 1/5/08 email states that today the average ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years.

4
5
6
7
8
9

The fact of lengthy reexaminations is also well known to the Niro Scavone firm that represents Black & Decker. The oft-reported U.S. Patent No. 5,253,341 "JPEG patent," owned by a client of Niro Scavone, emerged from a seven-year reexamination just days prior to the filing of Black & Decker's reexamination request of the '184 patent. It appears that a new reexamination has just been allowed of that same JPEG patent. *Kramer Decl.* ¶ 14 and 15.

10
11

      1.    *A closer look at PTO data shows the current length of reexamination proceedings to be far longer than 24 months.*

12
13
14
15

In the Black & Decker motion for stay, the moving parties pointed to a June 2006 statistical report from the PTO that listed the average pendency of reexaminations as 22.8 months, and median pendency as 17.6 months[2] ("2006 Report"). This was a material factor in the Court's decision to stay that case.[3]

16
17
18
19
20
21

In the present case, Lexar points to a more recent December 2007 PTO report of the same type as the 2006 Report (Exhibit F to the Lee Declaration) ("2007 Report") that shows the average pendencies to have increased to 24.0 and 18.6 months, respectively. Both of these reports are deceptive in that the averaging of all data for the past 28 years distorts the picture, by averaging out the huge increase in backlog that the PTO has experienced in recent years.

22
23
24

The 2007 Report is based upon averages over the entire course of the existence of reexamination proceedings since 1981 (see 2007 Report, paragraph 3). What it

25
26
27
28

---

[2] See *Judicial Notice*, Docket #180, Exhibit B, from <u>Black & Decker</u> case.

[3] See *Judicial Notice*, Docket #243, page 7:19-22, in the <u>Black & Decker</u> case: "An average delay for reexamination of approximately 18-23 months is especially inconsequential…. (<u>See</u> PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.)"

Case No. 07-CV-02321

1   does not show is the dramatic increase in filings vs. issuance of certificates (which

2   signal the end of the reexamination proceeding) in the past few years.

3       PTO Annual Reports contain statistics on the number of *ex parte*

4   reexamination filings, the number of those that are known to be related to litigation,

5   the number of *ex parte* reexaminations granted, and the total number of certificates

6   issued.   The official PTO website contains annual reports back to 1993 which

7   contain this additional statistical data back to 1989. *Kramer Decl.* ¶ 7, Exhibit A.

8       By comparing the incoming reexamination filings to the outgoing certificates,

9   a pattern of dramatically increasing backlog appears.   If one assumed a zero

10  carryover from 1988 into the 1989 figures for which records are available, the

11  backload of *ex parte* reexaminations has increased 100-fold from 1989 to the end of

12  2007 (from 16 to an estimated 1,658), with the rate of increase soaring from 2002 to

13  the present. *Kramer Decl.* ¶ 8, Exhibit B.

14      This increase is illustrated in the graph of PTO published numbers for new

15  reexamination requests and reexamination certificates issued for the years from 1989

16  through 2007 depicted below:

17



26  (a larger version of this graph, the underlying spreadsheet, and the PTO annual

27  reports from which the spreadsheet numbers were derived is part of Exhibit B).

1    If the PTO were able to keep issuing certificates at the rate of the highest

2  number of reexamination certificates ever issued in a single year, 367, and have zero

3  new filings, it would still take approximately 4.5 years for the PTO to erase the

4  backload of *ex parte* reexaminations. *Kramer Decl.* ¶ 9.  If the rate of certificate

5  issuances were at the average for the past five years (250), it would take 6.6 years to

6  erase that same backlog.  *Kramer Decl.* ¶ 10.

7    The impact of this newly analyzed PTO data extends beyond the realization

8  that reexaminations are extending for longer and longer periods of time.  Five-plus

9  year long reexaminations (1) undermine the legislative policy underlying creation of

10  the reexamination process in the first place; and (2) undermine this District's efforts

11  to streamline and expedite intellectual property cases through newly updated Local

12  Patent Rules; and (3) render older case law on the subject of litigation stays pending

13  reexamination inapposite.

14              *2.    Five-plus year reexaminations undermine congressional intent*
                      *for use of the reexamination process.*
15

16    The express congressional intention was that reexamination should "provide a

17  useful and necessary alternative for challengers and patent owners to test the validity

18  of United States patents in an efficient and relatively inexpensive manner." H.R.

19  REP. No. 96-1307 pt. 1, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463.

20    All reexamination proceedings under this section, including any appeal to the

21  Board of Patent Appeals and Interferences, are to be conducted with "special

22  dispatch."  35 U.S.C. § 305.

23    As demonstrated above, efficiency and "special dispatch" have not proven to

24  be accurate watchwords in recent years.  To the contrary, the filing of reexaminations

25  has become an effective weapon to delay or stop patent infringement plaintiffs from

26  proceeding to enforce their patents.  *Ex parte* reexamination practice is particularly

27  useful as a litigation tactic for accused infringers, who only incur a small up front

28  cost for filing the request, and have no further participation, expense or risk during

1   the proceeding.  This is not only demonstrated by numerous articles recommending

2   this strategy to infringement defendants,[4] but it is also demonstrated by the PTO's

3   own information, with litigation related *ex parte* reexamination filings soaring from a

4   mere 9% in 1990 to a whopping 57% in 2007. *Kramer Decl.* ¶ 11.  In this case,

5   defendant Lexar has not even had to shoulder the time or expense of preparing any

6   arguments for patent invalidity; it is simply trying to ride the coattails of another

7   alleged infringer's work.

8       The PTO was already commenting on problems keeping pace with these

9   increased litigation related filings in 2004, even though the estimated backlog was

10  still less than 800 at the end of 2003.  *Kramer Decl.* ¶ 12. In fact, the frequent use of

11  multiple reexamination requests by litigants to further delay of the litigation fueled a

12  PTO rule change in 2004 changing the standard of review for second or subsequent

13  reexamination requests.

14      These statistics are not a disparagement of the PTO's efforts.   It is a

15  recognition that the recent increase in reexamination filings have overwhelmed the

16  staffing and capabilities of the PTO.  The increase has made the statutory mandate of

17  "special dispatch" meaningless phrase.

18      The "Notice of Changes in Requirement" document (see *Kramer Decl.* ¶ 13,

19  Exhibit C) made the following statement in the Background section:

21          It has been the Office's experience, however, that both patent owners
22          and third party requesters have used a second or subsequent
            reexamination request . . . to prolong the reexamination proceeding, and
23          in some instances, to turn it essentially into an *inter partes* proceeding.
            These actions by patent owners and third party requesters have resulted
24          in multiple reexaminations taking years to conclude, thus making it
            extremely difficult for the Office to conclude reexamination
25          proceedings with "special dispatch" as required by statute (35 U.S.C.
26          305 for *ex parte* reexamination, 35 U.S.C. 314 *inter partes*
            reexamination).

28      _____

        [4] See *Kramer Decl.* Exhibit D.

Case No. 07-CV-02321

1    The PTO was having problems completing reexaminations with "special
2    dispatch" in 2004. The volume of increased filings demonstrate an even larger
3    problem now. Therefore, what was intended to be an efficient, timely process is now
4    an almost guaranteed strategy to delay patent litigation.

5            3.    *Lengthy reexamination proceedings also undermine the intent of*
6                 *the Local Patent Rules.*

7    In 2001, this Court adopted and implemented a set of Patent Local Rules with
8    the stated purposes of providing a predictable and uniform treatment for IP litigants
9    and to streamline the process by which a patent case is litigated, shortening the time
10   to trial or settlement and thereby reducing costs for all parties involved. Earlier this
11   year, this Court adopted improvements to the Patent Local Rules, taking what has
12   been learned, and making adjustments to better accomplish the goal of streamlining
13   the process. The Patent Local Rules set up a schedule whereby a claim construction
14   hearing is typically conducted within only a few months after the complaint is filed.

15   The intention of the Patent Local Rules cannot be met when an infringement
16   defendant can file an *ex parte* reexamination request and receive an almost automatic
17   multi-year exception from the timeline set out in the Local Rules, while incurring no
18   ongoing risk or expense during the pendency of the reexamination delay. While
19   district judges are working to streamline and expedite patent cases, the PTO's
20   statutorily-required "special dispatch" procedure has been getting slower and slower.

21   The net effect in this case and the related '184 infringement cases is that two
22   carefully timed *ex parte* reexaminations have been relied upon to try to deny SRDT
23   the ability to enforce its valid patent.

24
25           4.    *Caselaw supporting liberal grants of litigation stays pending the*
26                *completion of reexamination proceedings are inapposite.*

26   It is no surprise that so many *ex parte* reexamination requests are flooding the
27   PTO. These filings have become an oft-used weapon by patent infringement
28

Case No. 07-CV-02321

1   defendants because, in the past, litigation stays were routinely granted pending
2   conclusion of reexamination.  In 1990, the percentage of *ex parte* filings that were
3   known to be related to litigation was only nine percent (9%).  By 2007, after a host
4   of publications had pushed reexamination as a litigation strategy for defendants, the
5   percentage had increased more than six-fold to 57%.

6       The Black & Decker Order was based on legal opinions that either predated
7   the recent dramatic increase in reexamination filings and consequent PTO backlog of
8   cases, or on opinions that relied on that same outdated factual scenario.

9       The issue in *Ethicon Inc. v. Quigg*, 849 F.2d 1422 (Fed.Cir. 1988), was
10  whether the PTO could stay a reexamination pending completion of a court case, not
11  the other way around.  The *Ethicon* court cited *Gould v. Control Laser Corporation*,
12  705 F.2d 1340, 1342 (Fed.Cir. 1983), for the proposition that the court had authority
13  to order a stay pending conclusion of a PTO reexamination.   What the *Gould*
14  decision actually said was that "power already resides with the Court to prevent
15  costly pretrial maneuvering which attempts to *circumvent* the reexamination
16  procedure." (emphasis in original).  Plaintiff has done nothing here or in related
17  cases trying to circumvent the reexamination procedure.

18      Lexar cited the "'liberal policy' in favor of granting motions to stay pending
19  the outcome of PTO reexamination proceedings" (Docket #12, page 5:1-3) came
20  from the 1994 case of *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp.
21  1378, 1381 (N.D. Cal. 1994).  A close look at that decision reveals a statement by the
22  court that "it is clear from the cases cited by the parties that there is a liberal policy
23  of granting stays pending reexamination," but does not directly cite to any particular
24  case.   Furthermore, even if the Court had evaluated the approximate length of
25  reexamination proceedings in 1994 (there is no indication that it did), it would have
26  shown that the PTO was effectively handling its caseload, issuing approximately the
27  same number of certificates in each year as the number of new requests that were

28

1    being accepted.  A liberal policy of granting motions to stay pending the outcome of

2    reexamination proceedings was fully appropriate in 1994.  That is no longer the case.

3          None of the cases cited in the Black & Decker order considered the relative

4    length of time that the reexamination will take.  In more recent cases, some Courts

5    have acknowledged the extended duration of reexamination proceedings and are

6    exercising their inherent authority to not stay proceedings pending reexaminations

7    that can take several years to complete.

8

9          A court is under no obligation to delay its own proceedings by yielding
         to ongoing PTO patent reexaminations, regardless of their relevancy to
10         infringement claims which the court must analyze. *See id.* ("The
         [district] court is not required to stay judicial resolution in view of the
11         [PTO] reexaminations."); *see also Medichem, S.A. v. Rolabo, S.L.,* 353
         F.3d 928, 936 (Fed.Cir.2003) ("[O]n remand, a stay of proceedings in
12         the district court pending the outcome of the parallel proceedings in the
         PTO remains an option within the district court's discretion.") (stated in
13         the context of reissue proceedings for interfering patents before the
         Board of Patent Appeals and Interferences); *Patlex Corp. v.*
14         *Mossinghoff,* 758 F.2d 594, 602-03 (Fed.Cir.1985) (recognizing judicial
         discretion in stay determinations for patent proceedings).
15

16

17    *NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, 787 (E.D.Va.2005).

18    (2005).

19          The *NTP* court was adamant that it was not going to stay litigation based upon

20    the moving party's speculation that that patent would be invalidated shortly.

21

22         The likely duration and result of the PTO's reexamination proceedings
         and any subsequent (and likely) appeals are in dispute. RIM, turning a
23         blind eye to the many steps that must still be taken before a final
         determination can be issued by the PTO and confirmed, suggests that
24         the patents-in-suit will be invalidated in a matter of *months.* NTP, on the
         other hand, insists on the likelihood of the opposite result and gives a
25         reality-based estimated time frame of *years.* Regardless of which party's
         predictions this Court might adopt, any attempt at suggesting a likely
26         time frame and outcome of the PTO reexamination process is merely
         speculation. This Court cannot and will not grant RIM the extraordinary
27

28

Case No. 07-CV-02321

remedy of delaying these proceedings any further than they already have been based on conjecture.

*Id.*

Following in the same trend, the case of *Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155 (E.D. Texas, 2008), recently proceeded to plaintiff's verdict despite e*x parte* and *inter partes* reexaminations that had been ordered 13 months previous in which no office actions had been issued.

Other cases have reaffirmed that district courts are not obligated to issue stays, including *MercExchange, L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 562, 83 U.S.P.Q.2d 1688 (E.D.Va. Jul 27, 2007).

Because the re-analyzed PTO data show that the 1st reexamination on the '184 patent is likely to not be complete for approximately five (5) years from its filing, and because the 2nd reexamination has the potential to introduce additional delay in the completion of reexamination proceedings, a stay pending reexamination by the PTO should not be granted.

B.   Plaintiff Would Be Prejudiced Through The Inability To Identify and Serve All Proper Defendants.

Fed.R.Civ.P, Rule 15(c), places limitations on a party's ability to amend pleadings to add or substitute parties, and places restrictions on when such amendments relate back to the date of the initial filings.   Inability to identify responsible parties inhibits the ability to give those parties notice of the case, thereby increases the chance that the later identified parties will claim prejudice.   Further, failure to identify parties increases the likelihood that parties unaware of the litigation will destroy or dispose of critical evidence.

A complete stay of litigation before any preliminary steps are taken to identify proper parties and ensure initial discovery or preservation of evidence greatly prejudices the Plaintiff and prejudices the entire judicial process in this case.

C.    Plaintiff Would Be Prejudiced Through The Loss Of Evidence.

The Federal Rules of Civil Procedure do not expressly impose a duty to preserve evidence. Courts have construed the federal discovery rules, particularly Rule 26, to imply a duty to preserve all evidence that may be relevant in a case. *See Danis v. USN Communs, Inc*., 2000 U.S. Dist. LEXIS 16900 at *4-5. "**The obligation to preserve arises when the party has notice that the evidence is relevant to litigation** -- most commonly when the suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Treppel v. Biovail Corp*., 233 F.R.D. 363, 371 (2006).

If a complete stay is issued, there is no assurance that parties (whether parties to the suit or otherwise) will have knowledge of any obligation to preserve evidence, and in the case of third-party suppliers would actually have a disincentive to preserve evidence.

A preservation order protects the producing party by clearly defining the extent of its preservation obligations. *Id*. at 370. "In the absence of such an order, that party runs the risk of future sanctions if discoverable information is lost because [the party] has miscalculated." *Id*. Further, "[preservation] orders are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication." *Id*. at 370.  Because the duty of preservation exists without a court order, some courts are reluctant to grant motions to preserve evidence. *See Madden v. Wyeth*, 2003 U.S. Dist. LEXIS 6427.

Plaintiff needs to have an opportunity to conduct at least preliminary discovery to identify parties and request a detailed preservation order, otherwise it will be subjected to substantial prejudice as a result of a stay.

Motions to stay pending patent reexamination have been denied where the likely length of reexamination will serve to exacerbate the risk of lost evidence.  In

1    *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal. 2006).  That

2    is very much the situation here.

3    III.    DEFENDANT IS ESTOPPED FROM CLAIMING HARDSHIP
4            REQUIRING A STAY BY ITS COUNTERCLAIM FOR DECLARATORY
             RELIEF.

5            In *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1032 (C.D. Cal. 2005)*,*

6    the court denied a stay in part because both parties claimed in their motions for

7    preliminary injunction that they would be irreparably damaged absent immediate

8    action from the court.  Although the court denied both preliminary injunction

9    motions, it accepted both parties' representations that they will be prejudiced by

10   further delays.  "A swift resolution of the issues, according to both parties, is in the

11   best interest of all involved."

12           "The suppliant for a stay must make out a clear case of hardship or inequity in

13   being required to go forward, if there is even a fair possibility that the stay for which

14   he prays will work damage to someone else."  *Id.* (quoting *Unidisco v. Schattner,*

15   210 U.S.P.Q. 622, 629 (D.Md.1981) (citing *Landis v. North Am. Co.,* 299 U.S. 248,

16   255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

17           Defendant has asserted in its responsive pleading a counterclaim under the

18   Declaratory Judgment at 28 USC §§ 2201 *et seq.*  "[T]he purpose of the Declaratory

19   Judgment Act in patent cases is to provide the allegedly infringing party **relief from**

20   **uncertainty and delay** regarding its legal rights." *Sony Electronics, Inc. v. Guardian*

21   *Media Technologies, Ltd.* 497 F.3d 1271 (Fed.Cir. 2007) quoting *Goodyear Tire &*

22   *Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 956 (Fed.Cir.1987) (emphasis

23   added).

24           Further, the *Sony* Court noted that the U.S. Supreme Court had stated in its

25   decision in *MedImmune, Inc. v. Genentech, Inc.,* --- U.S. ----, 127 S.Ct. 764, 771 166

26   L.Ed.2d 604 (2007) that the test of a declaratory judgment claim for relief is whether

27   "there is a substantial controversy, between parties having adverse legal interests, of

28

**sufficient immediacy** and reality to warrant the issuance of a declaratory judgment." *quoting Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-1, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (emphasis added).

The allegations in Defendant's counterclaim at paragraphs 6 and 8, rely upon the Declaratory Judgment Act, and expressly assert that its legal rights are of "sufficient immediacy" that it needs relief from delay regarding its legal rights.

Parties "are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit." *Hughes v. Vanderbilt University* 215 F.3d 543, 549 (6th Cir., 2000) *citing  Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986).

The Court in *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th, Cir. 1988) stated: "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on party who made them."  The *American Title* Court further observed that:  "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *In re Fordson Engineering Corp.,* 25 B.R. 506, 509 (Bankr.E.D.Mich.1982).   Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.   *See White v. Arco/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983); *Fordson,* 25 B.R. at 509.

Further, the Court in *Soo Line R. Co. v. St. Louis Southwestern Ry.,* 125 F.3d 481, 483 (7th Cir. 1997) concluded:  "although the rule smacks of legalism, judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."

 Defendant's formal admission that its counterclaims are of "sufficient immediacy" cannot be overcome by Defendant simply by filing a motion and declaration asserting the opposite position.   Defendant is held to its judicial

16.

1    admission that it needs relief from delay regarding its legal rights – i.e., it does not
2    need a stay – and is estopped from arguing for a stay of the present litigation.

3        Because Defendant is barred by its judicial admissions from seeking a stay in
4    light of its declaratory relief counterclaims, Defendant's request for stay must be
5    denied.

6                                    **CONCLUSION**

7        There is no *per se* rule that patent cases should be stayed pending
8    reexamination.  The perception of such a rule has invited parties such as Defendant
9    to move for stay on the sole grounds that someone else's reexamination request is
10   pending before the PTO.

11       A stay of all aspects of this case is not appropriate for reasons articulated
12   herein, including loss of evidence, failure to learn of key parties, and prejudice to
13   both Plaintiff and Defendant.

14       Plaintiff has now presented the Court will newly analyzed PTO data that
15   changes the entire factual framework in which the Black & Decker Court entered
16   stay.  This warrants a new look and new balance of the equities involved in staying
17   this lawsuit.

18       Because the new data shows that a litigation stay pending reexamination
19   completely undermines the entire original purpose of the reexamination process, as
20   well as the Local Patent Rules, and would act to prejudice the Plaintiff in numerous
21   respects, the Court should deny the requested stay.

22

23   //
24   //

25
26
27
28

Case No. 07-CV-02321

1  RESPECTFULLY SUBMITTED this Wednesday, April 09, 2008.

2

3                                    JENS ERIK SORENSEN, as Trustee of
                                     SORENSEN RESEARCH AND DEVELOPMENT
4                                    TRUST, Plaintiff

5                                    /s/ J. Michael Kaler

6

7                                    J. Michael Kaler, Esq.
                                     Melody A. Kramer, Esq.
8                                    Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Melody A. Kramer, declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action.  My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600, San Diego, California, 92121.

On Wednesday, April 09, 2008 I served the following documents:

**PLAINTIFF'S OPPOSITION TO MOTION FOR STAY PENDING REEXAMINATION**

**DECLARATION OF MELODY A. KRAMER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR STAY PENDING REEXAMINATION**

**PLAINTIFF'S REQUEST FOR ORAL ARGUMENTS ON DEFENDANT LEXAR MEDIA, INC.'S MOTION FOR STAY**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Jared Bobrow<br>jared.bobrow@weil.com<br>Weil, Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065 | Lexar Media, Inc. | Email--Pleadings Filed with the Court via CM/ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees.  The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

Case No. 07-CV-02321

1

2

| X | (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California. |

3

4

| ☐ | (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee. |

5   I declare that the foregoing is true and correct, and that this declaration was executed on

6   Wednesday, April 09, 2008, in San Diego, California.

7

8                                                                    /s/ Melody A. Kramer

9                                                                    Melody A. Kramer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 07-CV-02321