# KALER LAW OFFICES

9930 MESA RIM ROAD
SUITE 200
SAN DIEGO, CALIFORNIA 92121
TELEPHONE: (858) 362-3151
FAX: (858) 824-9073

J. Michael Kaler

michael@kalerlaw.com

Intellectual Property Litigation

April 16, 2005

**Via FEDEX**

Mr. Eric B. Stang
President & CEO
Lexar Media, Inc.
47300 Bayside Pkwy.
Fremont, CA 94538
Phone: 510-413-1200

**CONFIDENTIAL OFFER OF COMPROMISE SUBJECT TO FEDERAL RULES OF EVIDENCE § 408**

RE: Lexar Media, Inc.'s ("LEXAR") unauthorized usage of the technology taught in United States Patent No. 4,935,184

Dear Mr. Stang:

We have examined several LEXAR products that incorporate plastic housings manufactured with plastics with different characteristics. From our examination, we have determined that the plastic housings of some of these products are substantially likely to be fabricated utilizing a process that infringes United States Patent No. 4,935,184 ("the '184 patent"), and we are continuing our investigations into other LEXAR products. Further, our records indicate that LEXAR is not currently licensed to utilize the '184 patented method.

I represent the Sorensen Research & Development Trust ("Trust"), the owner of the '184 patent entitled "Stabilized Injection Molding When Using a Common Mold Part With Separate Complimentary Mold Parts," issued on June 19, 1990. In addition to the '184 patent, the Trust is the owner of a number of patents issued to Jens Ole Sorensen, an inventor whose forty years in plastic injection molding have resulted in more than 65 United States patents and dozens of international patents. Mr. Sorensen has developed products and processes, which have been widely used in producing cassette tapes, medical devices, automotive parts, food and beverage containers, and children's

Mr. J Mr. Eric B. Stang
President & CEO
Lexar Media, Inc.
Unlicensed usage of the '184 patented method
April 16, 2005
page 2

toys. Some of Mr. Sorensen's present endeavors include developing methods to enable production of hollow injection molded products with reduced wall thickness and improved dimensional control. Where applicable, the capacity to produce injection-molded products with reduced wall thickness allows for the use of less plastic in the manufacture and generally allows for faster production cycle times.

The '184 patent provides a long-sought elegant solution to a pervasive problem in the injection molding of hollow plastic products. The problem is that the highly pressurized injection of molten plastic forces the mold parts to move relative to each other. This mold movement problem causes misalignment of the mold parts and results in products with walls of undesirable thickness variations if not adequately controlled. Mr. Sorensen has invented a number of methods for mold stabilization that are applicable in different injection molding situations. For these inventions, Mr. Sorensen has been awarded several different patents recognized in the United States and other major industrial powers around the world.

The '184 patented method facilitates production of plastic components made with two or more plastic injections with different characteristics. The '184 patented technology provides an improved method for reducing mold misalignment during the injection molding process. This assists the manufacturer in producing parts with controlled dimensions fabricated within narrower tolerances. The improved dimensional control can be used to produce components with more refined fit and finish, improving the overall quality and appearance of the product. Moreover, the improved dimensional control can facilitate a reduction in material wasted and a reduction in manufacturing cycle time, both of which can be leveraged into reduced manufacturing cost.

The '184 patented method increases stabilization of the mold parts during injection molding of laminated plastic parts produced sequentially in two cavities made up of one common mold part and different complementary mold parts. The '184 patent teaches a method to stabilize the core during the second or later plastic injection by molding one or more stabilizing regions into the first plastic material component(s) that impede relative movement of the mold parts during the second or later injection. By providing this additional stabilization of the mold parts against movement during the injection process, hollow products may be produced having more controlled dimensions. Use of the '184 process offers significant benefit in the manufacture of two-plastic plastic housings and similar products.

The following table lists LEXAR products that our inspection show to be substantially likely to have been produced through the use of a process which infringes

Mr. J Mr. Eric B. Stang
President & CEO
Lexar Media, Inc.
Unlicensed usage of the '184 patented method
April 16, 2005
page 3

the '184 patent (hereinafter, "Accused Products"). This list is not intended to be exhaustive, rather it indicates Accused Products that we have discovered and examined. Our investigation into additional Accused Products continues:

| ACCUSED PRODUCT |
| --- |
| **LEXAR MEDIA JumpDrive 128MB** |

My client is prepared to discuss reasonable terms for a license that would allow LEXAR to continue to practice the '184 process in the manufacture of its products. LEXAR must obtain a license under the '184 patent in order to continue importing into, manufacturing, offering for sale and/or selling the Accused Products within the United States. This requirement extends to any additional infringing LEXAR products that we have not yet identified. LEXAR has a legal duty to avoid infringement of United States patents. LEXAR's manufacture of its plastic housings outside the United States does not avoid infringement liability when those infringing products are imported into the United States.

I have enclosed for your convenience, two (2) sets of D-size drawing number D-5493 prepared by my client. We are providing these drawings as exemplars of the Accused Products that illustrate our infringement analysis. The top view (Fig. 1) of each drawing shows the Accused Product with an exemplary section line 4-4 through the product. The sectional view shown in Fig. 4 is taken along section line 4-4 and corresponds to Fig. 2B of the '184 patent. Fig. 4 illustrates where each element of the patent claims appears in the Accused Product. A comparison of Fig. 4 and Figure 2B of the '184 patent (illustrated at the bottom-left of the drawing) demonstrates that the claimed limitations of the '184 patent are present in the Accused Products in the same manner as in a preferred embodiment of the patent. Both figures show a cross-section of the molds with the hollow products having a closed end and an open end positioned in the mold cavity formed between a first common mold part (10) and second complementary mold part (26). The products have laminated walls (38) that extend to the rim of the products and consist of plastics having different characteristics. Additionally, each product has a portion of the first plastic material component (20) which functions as a stabilizing region (30) to impede the relative movement of the mold parts during the second injection.

Mr. J Mr. Eric B. Stang
President & CEO
Lexar Media, Inc.
Unlicensed usage of the '184 patented method
April 16, 2005
page 4

LEXAR's use of the '184 patented technology is further substantiated by the enclosed claim charts associated with the attached drawings. The claim charts compare the illustrated Accused Product to claim number one (1) of the '184 patent. The first column of the claim chart quotes the text of the claim. The second column provides commentary pointing out the corresponding structure or element of the Accused Product. The third column is a remark reference number. Finally, the fourth column identifies one or more reference figures from the accompanying drawing showing the particular aspect that is the subject of the remark. The chart rows are broken down by convenience to the commentary text. For your convenient reference, a copy of the '184 patent is enclosed.

It may be possible, although not substantially likely, that LEXAR manufactures some of the Accused Products in a manner such that production does not infringe the '184 patented process. In order that we may quickly resolve this issue, please provide answers to the following questions:

With regard to each and every Accused Product manufactured, sold or offered for sale within the past six years:

1. Was each plastic component of each housing molded in a different and distinct injection-molding machine?

2. Was the first molded plastic component manually moved between the different molding machines by hand?

3. Were no two plastic components of the plastic housing fabricated with any shared mold part?

**PLEASE BE ADVISED THAT THE FOREGOING IS A REQUEST UNDER THE UNITED STATES PROCESS PATENT AMENDMENTS ACT OF 1988, AND MORE SPECIFICALLY WITH REFERENCE TO 35 UNITED STATES CODE § 295, SEEKING FACTUAL INFORMATION NECESSARY TO VERIFY THAT PRODUCTS MADE, SOLD, IMPORTED INTO, OR USED IN THE UNITED STATES ARE MADE BY A PROCESS PATENTED IN THE UNITED STATES.**

The United States Process Patent Amendments Act of 1988 ("PPAA") provides at 35 U.S.C. § 295 as follows:

Mr. J Mr. Eric B. Stang
President & CEO
Lexar Media, Inc.
Unlicensed usage of the '184 patented method
April 16, 2005
page 5

### Sec. 295. Presumption: Product made by patented process

In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—

(1) that a substantial likelihood exists that the product was made by the patented process, and

(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,

the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

If LEXAR asserts that any Accused Product is not made with two mold cavities sharing one common mold part, or that any of the statements 1 through 3, hereinabove, is not correct for any Accused Product, please immediately notify me with the correct information and documentation to substantiate LEXAR's contention. In the absence of such countervailing evidence, our analysis leads us to the conviction that LEXAR is making unauthorized use of the '184 patented technology in the manufacture of each Accused Product.

Please provide the information requested within thirty (30) days of the date of this letter. This provides LEXAR with more than a reasonable amount of time to collect the required information. My client and I are prepared to hold such information in confidence, and to sign a suitable confidentiality agreement to that end.

Be advised that this constitutes a notice of patent infringement in violation of 35 U.S.C. § 271. Should LEXAR fail to diligently investigate this matter upon receipt of this notice, it will be considered a breach of LEXAR's affirmative duty to investigate allegations of patent infringement as provided in 35 U.S.C. § 287. Such breach of the duty to investigate is evidence of willful infringement of the '184 patent, which finding can support enhancement of damages awarded pursuant to 35 U.S.C. § 284.

We recognize that LEXAR contracts out the fabrication of many components of its tools to manufacturing agents. However, LEXAR is ultimately responsible for the

Mr. J Mr. Eric B. Stang
President & CEO
Lexar Media, Inc.
Unlicensed usage of the '184 patented method
April 16, 2005
page 6

infringement of the '184 patent in making, importing, offering for sale or selling its tools and components. LEXAR's liability holds regardless of whether it makes these parts itself or through a third-party. Neither production of the Accused Products through manufacturing agents, nor production of the Accused Products outside of the United States excuses LEXAR's liability for infringement of the '184 patent. Title 35, section 271 of the United States Code provides that:

> (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Moreover, with regard to patented processes, section 271 provides:

> (g) Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

My client has no interest in the policing problems that are inherent in licensing contracted parts fabricators. LEXAR is the party that offers to sell and sells these products in the United States. Therefore, LEXAR is liable as an infringer for those products which infringe United States patents, including the '184 patent.

While our infringement and licensing discussions will be with LEXAR, we will consider any evidence of non-infringement that is produced by LEXAR or its manufacturing agents. If LEXAR possesses evidence showing that any Accused Product is not actually made by an infringing process, providing that evidence to us immediately would greatly simplify matters. My client is prepared to withdraw the assertion of infringement with respect to any product for which we are provided sufficient proof demonstrating that the process actually used to make the product does not infringe the '184 patent.

There are a number of large, multi-national corporations that have licensed their usage of the '184 patented technology. To protect my clients' intellectual property rights, we cannot allow LEXAR's unlicensed usage to continue. There is a narrow window of opportunity at this early stage wherein the parties can resolve this matter

Mr. J Mr. Eric B. Stang
President & CEO
Lexar Media, Inc.
Unlicensed usage of the '184 patented method
April 16, 2005
page 7

without incurring high costs and legal fees through amicable discussions leading to a license agreement. In the interest of obtaining an amicable and rapid resolution of this matter, my client has authorized me to offer a fully paid-up license and release for all LEXAR's past and future use of the '184 patented technology in exchange for the sum of US$200,000. (Two Hundred Thousand U.S. Dollars). This offer expires by its own terms on May 21, 2005.

    Your anticipated courtesy in working with us toward a rapid and amicable resolution of this matter is greatly appreciated.

Cordially,

J. Michael Kaler

Encl:  Drawing No. D-5493
       Claim Chart for Drawing No. D-5493
       U.S. Patent No. 4,935,184