# EXHIBIT A

Case 5:08-cv-00095-JW   Document 22-2   Filed 04/21/2008   Page 1 of 18

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff<br>v.<br><br>DIGITAL NETWORKS NORTH AMERICA, INC., a Delaware corporation; LEGACY SUPPORT SERVICES, LTD. d/b/a S2G; and DOES 1-100,<br><br>Defendants. | Case No. 07cv 05568 JSW<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT DIGITAL NETWORKS NORTH AMERICA, INC.'S MOTION FOR STAY<br><br>DATE: January 18, 2008<br>TIME: 9:00 A.M.<br>Ctrm: 2, 17th Floor<br>Judge: Hon. Jeffrey S. White<br><br>PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT GRANT ORAL ARGUMENT ON THIS MATTER |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF OPPOSITION ........................................................................................... 1

FACTUAL SUMMARY ...................................................................................................... 1
    The '184 patent ........................................................................................................ 1
    Accused Products and Defendants .......................................................................... 2
    Status of company records relating to manufacture, import, and sale of accused
        products    3
    Pre-litigation communications between the parties ............................................... 3
    Reexamination and the Black & Decker case ........................................................ 4

ARGUMENT ....................................................................................................................... 4

    I.    A DISTRICT COURT MUST CONSIDER THREE FACTORS IN
          DETERMINING A REQUEST FOR STAY—PREJUDICE TO NON-
          MOVING PARTY, HARDSHIP TO MOVING PARTY, AND
          JUDICIAL ECONOMY. ................................................................................ 4

        A.    There Is A Strong Possibility Of Evidentiary Prejudice To
             Plaintiff If The Requested Stay Is Granted. ............................... 5

        B.    Defendant Will Not Suffer Any Hardship If A Stay Is Not
             Granted At This Stage Of The Proceedings. ............................. 9

        C.    Judicial Economy Is Best Served By A PARTIAL Stay Of This
             Case. ........................................................................................ 10

CONCLUSION    ................................................................................ 11

# TABLE OF AUTHORITIES

*ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378 (N.D.Cal. 1994) ...................... 5

*Cognex Corp. v. Nat'l Instruments Corp.,* No. Civ. A. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) ............................................................................................................... 10

*Enprotech Corp. v. Autotech Corp.,* 1990 WL 37217, 15 U.S.P.Q.2d 1319 (N.D.Ill. 1990) ....... 11

*Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d 1718 (1993) ............................................................... 10

*IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030 (C.D.Cal. 2005) ................................ 9, 10, 11

*In re Cygnus Telecomm. Tech.,* 385 F.Supp.2d 1022 (N.D.Cal. 2005) ........................................... 6

*Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (2005) ............................................................. 4, 5

*KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (2006) ..................................... 5

*Landis v. North Am. Co.,* 299 U.S. 248, 57 S.Ct. 163, (1936) ....................................................... 9

*Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at *2 (2006) ......................................................... 5

*Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107 (N.D.Cal. 2006) ........................... 5, 6, 10

*Unidisco v. Schattner,* 210 U.S.P.Q. 622(D.Md.1981) ................................................................... 9

*Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001) ................................... 4

**SUMMARY OF OPPOSITION**

Defendant Digital Networks' motion for stay should be DENIED as there is a substantial likelihood that the non-moving Plaintiff will suffer substantial prejudice if a complete stay of the litigation is granted, and the Court has insufficient information to determine whether judicial economy would be served by a stay.

Plaintiff respectfully requests that the Court issue an alternative order, which is a PARTIAL stay of the case, postponing claim construction briefing and trial, but allowing the parties to proceed with discovery related to production methods, sales data, and other matters for which claim construction is not critical, to avoid the serious risk of loss of evidence that would prejudice Plaintiff.

FACTUAL SUMMARY

The '184 patent. This case involves patent infringement allegations related to U.S. Patent No. 4,935,184, a process patent relating to multi-shot injection molding of plastics. A common application of use of this patent is dual plastic ski boots, consumer electronic products, kitchen utensils, and rubberized grips on the handles of power tools. Kramer Decl. ¶ 4.

The '184 patent has been licensed for use by such household name companies as 3M Company, BMW, Newell Rubbermaid, Hitachi-Maxell, Mercedes-Benz USA, Daimler-Chrysler, Philips Electronics, Robert Bosch, Thales (Magellan), Garmin International, Head USA, Nordica USA, Tecnica USA, Rossignol, Atomic Ski, Skil, Irwin Tools, Dremel, Strait-Line, Chicony Electronics, The Stanley Works, Milwaukee Electric, Welch Allyn, Griffin, Stanley Electric, Fluke, Acco, Harper Brush, Woodstream, and Roche. Kramer Decl. ¶ 5.

The '184 patent provides a long-sought elegant solution to a pervasive problem in the injection molding of hollow plastic products: i.e., how to stabilize the mold parts against relative movement during the highly pressurized injection of melted plastic. This mold part relative movement problem causes misalignment of

1  the mold parts and results in products with walls of uneven thicknesses if not
2  adequately controlled. Kramer Decl. ¶ 6.

3  The '184 patented method is directed toward stabilizing the mold parts against
4  relative movement during the second injection of injection molding of laminated
5  plastic parts produced sequentially in two cavities made up of at least one common
6  mold part and at least two different complementary mold parts. Kramer Decl. ¶ 7.

7  The '184 patent teaches a method to stabilize the mold parts during the second
8  or later plastic injection by molding one or more stabilizing regions into the first
9  plastic material component(s) that rigidly secure the two mold parts against
10 displacement during the second or later injection. Kramer Decl. ¶ 8.

11 By stabilizing the mold parts against mold part relative movement during the
12 injection process, hollow products may be produced having more controlled
13 dimensions. Kramer Decl. ¶ 9.

14 Accused products and the Defendants. The products accused of infringement
15 in this case are Rio-brand MP3 players. Rio MP3 players were originally produced
16 by Diamond Multimedia. Diamond Multimedia was sold to Taiwanese graphics chip
17 company S3. S3 then sold its chip business and morphed into SonicBlue. SonicBlue
18 declared bankruptcy in early 2003. Kramer Decl. ¶¶ 10-11.

19 DNNA was created in July 2003 (apparently by D&M Holdings Inc.) and
20 acquired the Rio line from the SonicBlue bankruptcy estate. Shortly thereafter, in
21 August 2003, DNNA announced the launch of five new MP3 players and aggressive
22 strategies for building the Rio line. Kramer Decl. ¶¶ 12-13.

23 However, by summer of 2005, DNNA's parent company announced that it
24 was selling off most of its Rio technology to SigmaTel, with most of the design and
25 technical personnel being hired by SigmaTel. DNNA has claimed that it ceased
26 sales of the accused MP3 players in September 2005. Kramer Decl. ¶ 14.

---

[1] Despite DNNA's claim, sales of the originally accused Rio MP3 players, and other models that also appear to infringe, continue to be sold via DNNA's website

Status of company records relating to manufacture, import, and sale of accused products. Before the filing of this litigation, Defendant's counsel, Mr. Hulbert, represented to Plaintiff's counsel, Ms. Kramer, that the SigmaTel acquisition left DNNA's records in a state of disarray and represented that DNNA would have difficulty finding actual sales numbers of the accused products. Although DNNA appears to still be in business, Dun and Bradstreet reported an inability to confirm operations as recently as March 2007. Kramer Decl. ¶¶ 15-16.

By letter to Plaintiff's counsel in February 2006, D&M Holdings USA General Counsel, Mr. Meisels, stated:

> The Rio products that were formerly produced by DNNA were manufactured overseas by third-party contract manufacturers. DNNA has requested input from these manufacturers concerning the issues raised in your letter as it relates to the Rio products. Communications with overseas contract manufacturers often move slowly notwithstanding diligent efforts. Not having continuing business with these entities increases the difficulties.

Kramer Decl. 17, Exhibit G.

Neither Mr. Meisels nor DNNA's outside counsel ever confirmed receipt of information from these manufacturers or otherwise revealed the status of those requests. Plaintiff does not know the identity or contact information for those companies. Kramer Decl. ¶ 18.

Pre-litigation communication between the parties. Plaintiff's counsel, J. Michael Kaler, sent an initial infringement notice to DNNA in October 2004. Co-counsel Melody Kramer followed up on those efforts both in writing and by telephone with representatives for DNNA. At no time during those communications did DNNA represent that it was claiming that the '184 patent was invalid. To the

---

(www.digitalnetworksna.com) which links to a website run by co-defendant Legacy Support Services, Ltd., a company doing business as S2G.

contrary, at least the last year of communications could be categorized as negotiations over an appropriate licensing/release fee. No agreement was reached and thus this suit was filed. *Kramer Decl. ¶ 19.*

<u>Reexamination and the Black & Decker case</u>. Plaintiff commenced patent infringement litigation against Black & Decker Corporation in August 2006. After almost a year of intense litigation, with a claim construction and trial of affirmative defenses and willfulness already scheduled, and within days after entry of an order requiring Black & Decker to turnover documents from its late in-house counsel's files, Black & Decker (U.S.) Inc. filed a request for reexamination of the '184 patent. *Kramer Decl. ¶ 21.*

The reexamination request was accepted by the USPTO and Plaintiff is currently awaiting receipt of a first office action. *Kramer Decl. ¶ 22.*

## **ARGUMENT**

### I. A DISTRICT COURT MUST CONSIDER THREE FACTORS IN DETERMINING A REQUEST FOR STAY—PREJUDICE TO NON-MOVING PARTY, HARDSHIP TO MOVING PARTY, AND JUDICIAL ECONOMY.

A district court is not required to stay judicial resolution of a patent infringement dispute in view of a pending reexamination. *Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). A court must weigh the parties competing interests as presented by the specific facts of the case at bar. *Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D.Cal. Sept. 27, 2005).

When determining the appropriateness of a stay pending reexamination, courts consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and

whether a trial date has been set. *Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at *2 (N.D.Cal. Dec. 14, 2006) (quoting *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D.Cal. 1994)); *see also Jain*, 2005 WL 2397041, at *1; *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D.Cal. Mar. 16, 2006).

Defendant's motion should be denied as there is a substantial likelihood that the non-moving party, Plaintiff, will suffer great prejudice if a complete stay of the litigation is granted, and, further, judicial economy can be served without entry of a complete stay at this stage in the proceedings, because the deteriorating situation with the manufacturer and its former suppliers indicates that loss of critical evidence is highly likely; and witnesses are likely to be scattered to the four winds over time.

### A. There Is A Strong Likelihood Of Evidentiary Prejudice To Plaintiff If The Requested Stay Is Granted.

Plaintiff will likely suffer substantial prejudice if Defendants request for a complete stay is granted because Defendant's own representations demonstrate a high risk of loss of critical evidence if this case is stayed before preliminary discovery is conducted. Such a showing of prejudice and clear tactical disadvantage weighs strongly against a stay.

For instance, in *Telemac*, motions to stay pending patent reexamination were denied where the likely length of reexamination served to exacerbate the risk of lost evidence. One of the defendants' individual sales records had already been lost, and the other defendant was in a precarious financial position. *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal. 2006). As the *Telemac* court noted:

> [Defendant's] failure to preserve individual records suggests that further delay could lead to further loss of information. Although the likely length of reexamination is not, in itself, evidence of undue prejudice, in the circumstances of this case, a possible lengthy delay

would put [plaintiff] at a clear tactical disadvantage. The Court finds that this favor weighs strongly against a stay.

*Id.*

Here, due to repeated turnover in corporate ownership and personnel of the accused product line, as well as the involvement of a series of contract overseas manufacturers, it may be extraordinarily difficult to locate information regarding the process used to manufacture the accused products, much less evidence relating to issues of damages and willfulness. The likely length of reexamination[2] will only serve to exacerbate the high risk of loss of evidence in this case. Thus, as in *Telemac*, a stay will serve to unduly prejudice Plaintiff and place Plaintiff at a clear tactical disadvantage in its efforts to prove its case of infringement.

<u>Repeated turnover of corporate ownership during relevant time periods</u>. The products accused of infringement in this case are Rio-brand MP3 players. The ownership and control of the Rio product line and suppliers of components have changed hands repeatedly during its years of existence and production of the products appears to have ceased, making it difficult to ascertain the identity of knowledgeable persons and custodians of relevant records.

Rio MP3 players were originally produced by Diamond Multimedia. Diamond Multimedia was sold to Taiwanese graphics chip company S3. S3 then sold its chip business and morphed into SonicBlue. SonicBlue declared bankruptcy in early 2003.

DNNA was created in July 2003 (apparently by D&M Holdings Inc.) and acquired the Rio line from the SonicBlue bankruptcy estate. Shortly thereafter, in

---

[2] Reexaminations generally take from six months to three years. *Telemac*, 405 F. Supp.2d at 1110 (citing *In re Cygnus Telecomm. Tech., LLC Patent Litig.*, 385 F.Supp.2d 1022, 1023 (N.D.Cal. 2005). The '184 patent reexamination is already in its sixth month and the first office action has not yet issued.

1  August 2003, DNNA announced the launch of five new MP3 players and aggressive
2  strategies for building the Rio line.

3  However, by summer of 2005, DNNA's parent company announced that it
4  was selling off most of its Rio technology to SigmaTel, with most of the design and
5  technical personnel being hired by SigmaTel.  DNNA has claimed that it ceased
6  sales of the accused MP3 players in September 2005.[3]  The risk of loss of evidence
7  as time passes beyond the completion of production by foreign-based contract
8  suppliers is even greater.

9  Before the filing of this litigation, Defendant's counsel, Mr. Hulbert,
10 represented to Plaintiff's counsel, Ms. Kramer, that the SigmaTel acquisition left
11 DNNA's records in a state of disarray and represented that DNNA would have
12 difficulty finding actual sales numbers of the accused products.  Although DNNA
13 appears to still be in business, Dun and Bradstreet reported an inability to confirm
14 operations as recently as March 2007.

15 <u>Turnover in personnel</u>.  Plaintiff's initial infringement notice to DNNA in
16 October 2004 went to President, Hugh Cooney, at DNNA's Santa Clara, California
17 address.  He never responded to that notice.  Plaintiff made further attempts to
18 contact DNNA, finally receiving a letter from David Meisels, General Counsel for
19 D&M Holdings US, Inc. (presumably DNNA's parent company) who advised that
20 Mr. Cooney was no longer employed by DNNA.

21 In May 2006, outside counsel for DNNA, Mr. Hulbert, sent Ms. Kramer a
22 declaration relating to a claimed cessation of sales of the accused MP3 players as of
23 September 2005 signed by Bernie Sepaniak identifying himself as President of
24 Digital Networks North America, Inc.  However, Plaintiff has been unable to

---

[3] Despite DNNA's claim, sales of the originally accused Rio MP3 players, and other models that also appear to infringe, continue to be sold via DNNA's website (www.digitalnetworksna.com) which links to a website run by co-defendant Legacy Support Services, Ltd., a company doing business as S2G.

confirm Mr. Sepaniak's capacity, and in fact has since located a press release from D&M Holdings regarding Mr. Sepaniak dated December 2006 that puts into question whether Mr. Sepaniak even was President of DNNA or the Rio line. *Kramer Decl. ¶ 25*, Exhibit H.

Additionally, public reports show that a portion of the Rio personnel were transferred to SigmaTel, making them difficult to identify and locate.

<u>Substantial difficulty in obtaining manufacturing information</u>. Mr. Meisels' February 2006 letter stated:

> The Rio products that were formerly produced by DNNA were manufactured overseas by third-party contract manufacturers. DNNA has requested input from these manufacturers concerning the issues raised in your letter as it relates to the Rio products. Communications with overseas contract manufacturers often move slowly notwithstanding diligent efforts. Not having continuing business with these entities increases the difficulties.

*Kramer Decl. ¶ 17*, Exhibit G.

Neither Mr. Meisels nor DNNA's outside counsel ever confirmed receipt of information from these manufacturers or otherwise revealed the status of those requests. Because Plaintiff does not know even the identity or contact information for those companies, Plaintiff has no means of doing any independent investigation either.

There is no reasonable assurance that records relating to the acquisition, design, manufacture, import, and sales of the accused MP3 players will still be available, or locatable, when reexamination of the '184 patent is complete. DNNA already claims difficulty in finding records now. That situation can only get worse over time. It is likely that all records and persons with knowledge of relevant information will be gone and untraceable after the passage of another year or two for the completion of the reexamination. Furthermore, if Plaintiff is unable to ascertain the location of records of sales, it will be greatly prejudiced in its ability to prove

reasonable royalty amounts. Evidence relating to knowledge and willfulness will likely disappear as well.

If DNNA's informal representations are correct, that manufacture has ceased and that manufacture was done by overseas, third-party contract manufacturers, both sides will suffer prejudice in preparing their infringement and non-infringement cases. Acquisition of factual information regarding the manufacturing process is not dependent upon completion of the reexamination, nor a claim construction hearing by the Court.

### B. Defendant Will Not Suffer Any Hardship If A Stay Is Not Granted At This Stage Of The Proceedings.

"The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, <u>if there is even a fair possibility that the stay for which he prays will work damage to someone else</u>." *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1032 (C.D.Cal. 2005) (emphasis added) (quoting *Unidisco v. Schattner,* 210 U.S.P.Q. 622, 629 (D.Md.1981) (citing *Landis v. North Am. Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

As described above, there is a significant risk that the requested stay would damage Plaintiff, and even possibly damage the moving party. Therefore, Defendant DNNA must make out a clear case of hardship or inequity if no stay is ordered. Defendant has not done so.

DNNA's moving papers have failed to identify any particular hardship that it would suffer as a result of no stay being granted other than things that are the natural result of being a defendant in a patent infringement case.

DNNA cites the *Bausch & Lomb* case for the proposition that Defendant could suffer irreparable harm if the Court found the patent valid and infringed, and Defendant would pay damages that they could not recover in the event of a later USPTO finding of invalidity. This sole claim of prejudice is entirely mooted if the

Court issues a partial stay, staying only claim construction and trial of the case until after completion of the reexamination, while allowing discovery and other matters to go forward.

Plaintiff is not proposing that this case progress all the way to the eve of trial, or even claim construction, during the pendency of the reexamination. Rather, Plaintiff agrees that expert depositions on claim construction, claim construction briefing and hearing, as well as trial on infringement, can and should wait until conclusion of the reexamination proceedings. However, Defendant will not suffer any prejudice by filing a responsive pleading to the complaint, and responding to limited discovery requests aimed at preservation of evidence. Some examples of critical discovery that does not require completion of the reexamination include: (1) information on the manufacturing processes used; (2) production and sales numbers; and (3) the identities and locations of knowledgeable witnesses, documents and physical evidence.

### C. Judicial Economy Is Best Served By Only a PARTIAL Stay Of This Case.

Some courts have found that judicial economy does not warrant a stay pending reexamination. Although reexamination may simplify issues for trial, it often leaves a myriad of issues unresolved and unaddressed for long periods of time. *IMAX*, 385 F.Supp.2d at 1033; *Telemac*, 450 F.Supp.2d at 1111; *Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d 1718, 1993 WL 625509, at *2 (E.D.Cal. Sept. 15, 1993).

> As some courts have noted, when reexamination potentially will eliminate only one issue out of many, a stay is not warranted." In *Cognex Corp. v. Nat'l Instruments Corp.,* No. Civ. A. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001), for example, the court concluded that a stay would not simplify the issues because the complaint alleged "a variety of claims which are not linked to the patent infringement claim." *Id.* at *2. Similarly, in *Gladish v. Tyco Toys Inc.,* 1993 WL 625509, 29 U.S.P.Q.2d 1718, 1720

(E.D.Cal.1993), the court noted that "[t]he reexamination proceeding will not finally resolve all the issues in the litigation." In that case, invalidity was asserted on more grounds than prior publications and patents, the only grounds the PTO considers during reexamination. The court concluded that it was "the only forum for complete consideration of ... evidence of invalidity." *Id.* Because even after the reexamination, invalidity would continue to be an issue (unless all claims were cancelled), a stay would not preserve many resources. *Id.; see also Enprotech Corp. v. Autotech Corp.,* 1990 WL 37217, 15 U.S.P.Q.2d 1319, 1320 (N.D.Ill. 1990) (denying motion to stay in part because PTO would not resolve claims of inequitable conduct).

*IMAX*, 385 F.Supp.2d at 1032-33.

There is no indication to what degree the reexamination will resolve issues in dispute between the parties to this suit, if any. DNNA has not filed any answer or responsive pleading (and has been granted an extension to file same). Therefore, the parties and the Court do not even know if DNNA takes the position that the '184 patent is invalid (DNNA never asserted invalidity during the three-year pre-litigation communications) nor on what grounds. Nor do the parties or the Court know which affirmative defenses or counterclaims will be asserted in this case, if any. Given the stage of the litigation, the factor of judicial economy cannot be properly weighed in the analysis of whether to stay this suit.

## **CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant DNNA's motion for stay as framed, require Defendants to respond to the Amended Complaint, and allow the parties to conduct limited discovery to avoid the loss of necessary evidence during the time that the '184 patent is in reexamination. The Court could then wait to schedule claim construction briefing and trial for a time after the reexamination is concluded. Specifically, Plaintiff requests the Court to issue an order as follows:

1.    Require Defendants to file a responsive pleading pursuant to Fed.R.Civ.P. Rules 8 and 12 within 10 days, to allow the Court and Plaintiff to know what Defendants assertions and defenses are in this case;

2.    Require the parties to engage in a Rule 26 discovery conference to outline the scope of discovery anticipated by all parties and propose a discovery schedule to cover aspects of the case that do not directly bear on the scope of invalidity being considered by the USPTO in reexamination or on explicit claim construction;

3.    Require the parties to exchange initial disclosures pursuant to Rule 26;

4.    Allow both parties to conduct depositions and written discovery requests to preserve evidence for the purposes of later trial as follows: the identity and location of manufacturers of the Accused Products, the volume of sales of the Accused Products identified in the Amended Complaint; and the manufacturing processes used to produce the Accused Products.

DATED this Thursday, December 27, 2007.

                      JENS ERIK SORENSEN, as Trustee of
                      SORENSEN RESEARCH AND DEVELOPMENT
                      TRUST, Plaintiff

                      /s/ J. Michael Kaler

                      Melody A. Kramer, Esq.
                      J. Michael Kaler, Esq.
                      Attorneys for Plaintiff

# PROOF OF SERVICE

I, J. Michael Kaler, declare: I am and was at the time of this service working within in the County of San Diego, California. I am over the age of 18 year and not a party to the within action. My business address is the KaLer Law Office, Inc., 9930 Mesa Rim Road, Suite 200, San Diego, California, 92121. I am a member of the State Bar of California and the Bar of this Court.

On December 27, 2007, I served on the parties to this action the following documents:

**PLAINTIFF'S OPPOSITION TO DEFENDANT DIGITAL NETWORKS NORTH AMERICA, INC.'S MOTION FOR STAY; and DECLARATION OF MELODY A. KRAMER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT DIGITAL NETWORKS NORTH AMERICA, INC.'S MOTION FOR STAY**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| David A. Jakopin<br>Theodore K. Bell<br>Daniel J. Richert<br>Pillsbury Winthrop et al<br>2475 Hanover Street<br>Palo Alto, CA 94304-1114<br>david.jakopin@pillsburylaw.com<br>tad.bell@pillsburylaw.com<br>Daniel.richert@pillburylaw.com<br>650-233-4545 FAX | Defendant Digital Networks North America, Inc. | Email – Pleadings Filed with the Court |
| Bradley J. Hulbert<br>Richard A. Machonkin<br>Kurt W. Rohde<br>McDonnell Boehnen et al<br>300 South Wacker Drive<br>Chicago, IL 60606-6709<br>hulbert@mbhb.com<br>machonkin@mbhb.com<br>rohdek@mbhb.com<br>312-913-0002 FAX | Defendant Digital Networks North America, Inc. | Email – Pleadings Filed with the Court |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a

13.

Case No. 07CV05568 JSW

1 | sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

3 | ☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees. The facsimile transmissions were reported as complete and without error.

5 | ☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

7 | ☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

10 | I declare that the foregoing is true and correct, and that this declaration was executed on Thursday, December 27, 2007, in San Diego, California.

/s/ J. Michael Kaler

_____

J. Michael Kaler

14.

Case No. 07CV05568 JSW