J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
Email: michael@kalerlaw.com

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff<br>v.<br><br>LEXAR MEDIA, INC., a Delaware corporation; and DOES 1 – 100,<br><br>Defendants.<br><br>and related counterclaims. | Case No. C08-00095 JW<br><br>**AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR APPLICATION OF 35 U.S.C. § 295 PRESUMPTION OF INFRINGEMENT**<br><br>Date: June 30, 2008<br>Time: 9:00 A.M.<br>Courtroom 8, 4th Floor<br>Judge: The Hon. James Ware<br><br>*Oral Argument is Respectfully Requested at Hearing on This Matter.* |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTUAL SUMMARY ................................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.  THE COURT IS AUTHORIZED BY 35 U.S.C. § 295 TO
    INVOKE A PRESUMPTION OF INFRINGEMENT. .................................... 2

II. A SUBSTANTIAL LIKELIHOOD EXISTS THAT THE ACCUSED
    PRODUCTS WERE MANUFACTURED THROUGH USE OF THE '184
    PATENTED PROCESS .................................................................................. 3

    A.  The Evidentiary Burden To Activate The 35 U.S.C. § 295 Presumption
        Of Infringement Is Lower Than A Fair Preponderance At Trial. .......... 3

    B.  Based Upon Available Evidence, A Substantial Likelihood Exists That
        The Accused Products Were Manufactured Through Use Of The '184
        Patented Process………………………………………………….. ...... 4

    C.  Due To The Unavailability Of Compulsory Discovery To Obtain
        Additional Manufacturing Information, And The Unreliability Of Any
        Voluntarily Produced Evidence, The Available Evidence Is Sufficient
        For The Court To Invoke The 35 U.S.C. § 295 Presumption Of
        Infringement Now. .................................................................................. 7

III. PLAINTIFF HAS MADE A REASONABLE EFFORT TO DETERMINE
     THE PROCESS ACTUALLY USED IN THE PRODUCTION OF THE
     PRODUCT AND WAS UNABLE TO SO DETERMINE ............................. 7

    A.  The purpose of the 35 U.S.C. § 295 rebuttable presumption of
        infringement is to address the difficulty a patentee may have in proving
        that the patented process was actually used. .......................................... 7

    B.  Defendant imports products produced by a Chinese manufacturers not
        subject to U.S. discovery. ........................................................................ 9

    C.  Even if discovery were feasible it would not be trustworthy as there is
        no enforcement of U.S. judgments in China. ....................................... 11

D.   Plaintiff has made a reasonable effort to determine the process. ....... 12

CONCLUSION ....................................................................................... 13

# TABLE OF AUTHORITIES

<u>Cases</u>

*Aventis Pharmaceuticals v. Barr Laboratories, Inc.*, 411 F.Supp.2d 490 (2006) .................................................................................................................. 4, 13

*Novo Nordisk of North America, Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1368 n.6 (Fed. Cir. 1996) ...................................................................................... 3

*Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359-60 (Fed. Cir. 2000) .......................................................... 3

*Pfizer Inc. v. F & S Alloys and Minerals Corp*, 856 F.Supp. 808 (S.D.N.Y., 1994.) ................................................................................................. 4, 13

*Popular Imports, Inc. v. Wong's Intern., Inc.*, 166 F.R.D. 276 (E.D.N.Y. 1996) ................................................................................................................... 11

*United States v. Leung Pak Lun, et al* CR 88 0214-WHO ................................. 11, 13

<u>Statutes</u>

35 U.S.C. § 295 ........................................................................................................ 1

<u>Other Authorities</u>

Diplomatic Note No. 106 dated 6 November 1981, Diplomatic Note No. 88 dated 11 September, and Diplomatic Note No. 77 dated 11 September 1996) ............................................................................................... 10

*House Committee on the Judiciary, Process Patents Amendments Act of 1987*, H.R. REP. NO. 100-60 (1987). ........................................................................ 9

*Senate Committee on the Judiciary, Process Patents Amendment Act of 1987*, S. REP. NO. 100-83 (1987) ............................................................................ 4, 9

**INTRODUCTION**

Plaintiff respectfully requests that the Court grant its amended motion pursuant to 35 U.S.C. § 295 and invoke the presumption of infringement as to the Accused Products for the following reasons:

1. The products accused of infringement is substantially likely to have been manufactured through use of the '184 patented process;

2. Plaintiff has made reasonable, but unsuccessful, efforts to obtain the process actually used to manufacture the products, but have been unable to do so; and

3. Additional, reliable evidence of the process utilized will not become available in litigation because the manufacturing is in China, beyond the reach of U.S. discovery laws and enforcement.

**FACTUAL SUMMARY**

The product accused of being manufactured through unauthorized use of a U.S. patented process is Lexar's Media JumpDrive 128MB ("JumpDrive" or "Accused Product"). According to its packaging, the JumpDrive is manufactured in China. *Kramer Decl.* ¶ 8, Exhibit E.

On April 16, 2005, Plaintiff Sorensen Research and Development ("Sorensen")'s counsel, Michael Kaler, sent a formal request to Defendant Lexar Media, Inc., ("Lexar") under the United States Process Patent Amendments Act of 1988 (35 U.S.C. § 295) seeking factual information necessary to verify whether the JumpDrive, sold, imported into, or used in the United States was made using the process patented in United States Patent No. 4,935,184 (the '184 patent"). *Kramer Decl.* ¶ 4, Exhibit A, pages 4 and 5.

The letter set forth a detailed analysis of the existence of a substantial likelihood that the Accused Products were manufactured with a method that infringed on the '184 patent, and enclosed drawings, a claim chart, and a copy of the

'184 patent. *Kramer Decl.* ¶ 4, Exhibit A.

In a letter dated May 19, 2005, counsel for Lexar, Mark A. Flagel, claimed that he had received written confirmation from its foreign suppliers that they did not infringe on the '184 patent. The foreign manufacturers were not identified. Moreover, no details were provided with regard to the type, manner, conduct, extent and persons involved with any investigation undertaken with regard to the alleged process. *Kramer Decl.* ¶ 5.

After a number of unsuccessful exchanges, Plaintiff requested that Lexar produce a legally admissible declaration by a U.S. based Lexar representative who had personal knowledge of the process used to fabricate each of the Accused Products. Lexar refused to provide the requested declaration. *Kramer Decl.* ¶ 6.

Plaintiff also requested copies of the claimed written confirmations of non-infringement from Lexar's suppliers, but Lexar never identified the manufacturers nor provided the confirmations. *Kramer Decl.* ¶ 6.

On January 7, 2008, this case was filed, accusing Defendant of infringing on the '184 patented process in the manufacturing, import, sale and/or offer for sale of the JumpDrive. (Docket #1).

## ARGUMENT

I.  THE COURT IS AUTHORIZED BY 35 U.S.C. § 295 TO INVOKE A PRESUMPTION OF INFRINGEMENT.

The United States Process Patent Amendments Act of 1988 provides as follows:

> Sec. 295. Presumption: Product made by patented process
>
> In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—
>
> (1) that a substantial likelihood exists that the product was made by the patented process, and

2.

> (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,
>
> **the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.**

35 U.S.C. § 295 (emphasis added).

35 U.S.C. § 295 is a statutory burden-shifting provision, whereby the accused infringer's product is presumed to have been made by the patented process. When a court finds that the patent holder is unable to determine the process that was used by the manufacturer, the patent holder's showing of a "substantial likelihood" of infringement shifts the burden of establishing that the product was not made by the patented process to the alleged infringer, the party best able to obtain the evidence of the process used. *Novo Nordisk of North America, Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1368 n.6 (Fed. Cir. 1996); *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359-60 (Fed. Cir. 2000).

II. SUBSTANTIAL LIKELIHOOD EXISTS THAT THE ACCUSED PRODUCTS WERE MANUFACTURED THROUGH USE OF THE '184 PATENTED PROCESS.

   A. The Burden To Activate The 35 U.S.C. § 295 Presumption Of Infringement Is Lower Than A Fair Preponderance At Trial.

The "substantial likelihood" prong of the § 295 has not been thoroughly developed in the published cases. *See Aventis Pharmaceuticals v. Barr Laboratories, Inc.*, 411 F.Supp.2d 490 (2006). By contrast, the legislative history is unambiguous that a "substantial likelihood" is less than a preponderance of the evidence at trial:

> Exactly how much evidence will be needed in particular situations to

satisfy the "substantial likelihood" condition will depend on the circumstances. However, **the patentee's burden would be less than that of proving successfully at trial by a fair preponderance of the evidence** that a product in question was in fact made by the patented process but would be more than a slight possibility that the product was so made.

Senate Committee on the Judiciary, Process Patents Amendment Act of 1987, S. REP. NO. 100-83, at 45 (1987) (emphasis added).

In *Pfizer Inc. v. F & S Alloys and Minerals Corp*. 856 F.Supp. 808 (S.D.N.Y., 1994) the court interpreted the above rule to mean that the moving party "must establish by a preponderance of the evidence that there is a substantial likelihood" of infringement. *Id.* It should be noted that the *Pfizer* Court's construction of the term effectively describing a preponderance of a preponderance, is much like the multiplication of two fractions, the result would be much less than the "just more likely" standard that defines a preponderance of evidence at trial would require.

    B.    <u>Based Upon Available Evidence, A Substantial Likelihood Exists That The Accused Products Were Manufactured Through Use Of The '184 Patented Process.</u>

Plaintiff's expert has physically examined the Accused Products and determined that every element of Claim 1 of the '184 patented process that can be determined without access to the manufacturer's first-hand information is present. *Petrie Decl.* ¶¶ 3, 55. Access to the manufacturing plant and manufacturers themselves is unavailable in this action because Lexar has failed and refused to identify the manufacturers, and failed and refused to provide claimed written confirmations of non-infringement. *Kramer Decl.* ¶ 6. Furthermore, as will be described later in the brief, Sorensen cannot compel access to Chinese manufacturing plants, even if they are identified.

The '184 patent, entitled "Stabilized Injection Molding When Using a Common Mold Part With Separate Complimentary Mold Parts," was issued on June

19, 1990. The '184 patent provides a long-sought elegant solution to a pervasive problem in the injection molding of hollow plastic products, i.e., how to stabilize the mold parts against relative movement during the highly pressurized injection of melted plastic. *Petrie Decl.* ¶ 17.

The '184 patented method is directed toward stabilizing the mold parts against relative movement during the second injection of an injection molding process whereby laminated plastic parts are produced sequentially in two cavities made up of at least one common mold part and at least two different complementary mold parts. The '184 patent claims a method to stabilize the mold parts during the second or later plastic injection by molding one or more stabilizing regions into the first plastic material component(s) that rigidly secure the two mold parts against displacement during the second or later injection. *Petrie Decl.* ¶ 18.

The existence of each of the elements of Claim 1 of the '184 patent in the process used to manufacture the Accused Products has never been contested or refuted by Lexar via sworn declaration nor even by providing copies of claimed letters from suppliers. *Kramer Decl.* ¶ 6.

1. The Accused Products are plastic, thin-walled and hollow.

2. The Accused Products are produced by injection molding, and possess closed ends and open ends.

3. The Accused Products have laminated walls that terminate in a rim at an open end.

4. The Accused Products are molded utilizing a first mold cavity and a second mold cavity, where the first mold cavity is formed of at least one first common mold part and at least one first complementary mold part.

5. The second mold cavity is formed of at least one first common mold part and at least one second complementary mold part.

6. Each of the following process steps, A through J, are followed in production of each of the Accused Products:

     A.    The first common mold part and the first complementary mold part are combined to assemble the first mold cavity in production of the Accused Products.

     B.    A first plastic material is injected into the first mold cavity in production of the Accused Products.

     C.    The injected first plastic material is solidified to form a first plastic material component in production of the Accused Products.

     D.    The first common mold part and the second complementary mold part are combined to assemble the second mold cavity in production of the Accused Products, with the first plastic material component attached to the first common mold part during assembly of the second mold cavity. The first plastic material component is then contained within the second mold cavity.

     E.    A second plastic material having different characteristics than the first plastic material is injected into the second mold cavity in production of the Accused Products.

     F.    After the second plastic material is injected, it solidifies to form a second plastic material component that fuses with the first plastic material component to produce the Accused Products.

     G.    The first plastic material component has at least one stabilizing region.

     H.    The stabilizing region(s) in the first plastic material component, rigidly secure the first common mold part, in position relative to the second complementary mold part in production of the Accused Products, allowing improved control of dimensions.

     I.    The first plastic material of the Accused Products reaches the rim of the Accused Product.

     J.    The second plastic material of the housing of the Accused Product reaches the rim of the Accused Products.

*Petrie Decl.* ¶¶ 42-54.

The presence or absence of most elements of the '184 patent can be determined with near certainty through physical and destructive examination of the Accused Product. All of those elements that can be determined from an assessment of the Accused Product are present. With regard to those few elements for which absolute determination without inspection of the mold tooling, the best evidence that can be gathered from examination of the Accused Products and consideration of commercially viable manufacturing techniques shows that those elements were very likely present in the Accused Processes. *Petrie Decl.* ¶ 55.

    C.    <u>Due To The Unavailability Of Compulsory Discovery To Obtain Additional Manufacturing Information, And The Unreliability Of Any Voluntarily Produced Evidence, The Available Evidence Is Sufficient For The Court To Invoke The 35 U.S.C. § 295 Presumption Of Infringement Now</u>.

Complete confirmation of the existence of a common mold part usually requires access to the actual injection molds and manufacturing equipment. *Petrie Decl.* ¶ 54.

Plaintiff has not been granted access to the manufacturing plants for the Accused Products, and cannot compel plant inspections or other discovery in China as more fully described in Section III, B and C, below.

Because the actual manufacturing process at issue is located in a country that is inaccessible to compulsory discovery, the Court need not wait until later in these proceedings to invoke the presumption of infringement. It just such a situation as this for which the presumption was created.

III.    PLAINTIFF HAS MADE REASONABLE EFFORTS TO DETERMINE THE PROCESS ACTUALLY USED IN THE PRODUCTION OF THE PRODUCT AND WAS UNABLE TO SO DETERMINE.

    A.    <u>The 35 U.S.C. § 295 Presumption Of Infringement Is Intended To Address The Difficulty Of Proof That The Patented Process Was Used.</u>

35 U.S.C. § 295 was passed to help U.S. patent holders deal with the increasing number of foreign manufactures importing infringing products into the United States, and the difficulty in obtaining discovery of manufacturing processes from such foreign manufacturers:

> This presumption addresses a great difficulty a patentee may have in proving that the patented process was actually used in the manufacture of the product in question in those cases, where the manufacturer is not subject to discovery under the Federal Rules of Civil Procedure. For example, patent owners will frequently be unable to obtain information concerning the nature of processes being practiced by foreign manufacturers. Shifting the presumption should create no substantial burden, as an accused infringer should be in a much better position to establish that the product was made by another method.

*House Committee on the Judiciary, Process Patents Amendments Act of 1987*, H.R. REP. NO. 100-60, at 16 (1987).

The intent of Section 295 is to place the burden of proving/disproving infringement on the party in the best position to offer the proof. In most cases, the importer who, by reason of their relationship with the manufacturer, is in the best position to get process information:

> Importers, for example, because of their relationships with foreign manufacturers, may be able to exert pressure on such manufacturers to produce the necessary information. Users and sellers who purchase possibly infringing articles from importers may be able to exert similar pressure on those importers, who would in turn influence foreign manufacturers.

*Senate Committee on the Judiciary, Process Patents Amendment Act of 1987*, S. REP. NO. 100-83, at 57 (1987).

With this in mind, the legislature intended the threshold for the burden shifting to be less than that of requiring the patent holder to submit letters rogatory:

> A reasonable effort requirement could easily be satisfied in the United States through our discovery procedures. For a foreign manufacturer the patentee would have to take some reasonable step, such as writing to the manufacturer, to determine how the product was made and to have been unsuccessful in this regard. The reasonableness of the effort would depend on the facts of the case but should generally avoid the need for such measures as letters rogatory or suits in a foreign country.

*Senate Committee on the Judiciary, Process Patents Amendment Act of 1987*, S. REP. NO. 100-83, at 45 (1987).

The legislative history is abundant that the very purpose of section 295 is to lift from the shoulders of patent holders the undue burden of being forced to pursue discovery options outside the Federal Rules against foreign manufactures in foreign countries.

In this case, Lexar is the importer and seller. Per its own statements, Lexar is not the manufacturer. The manufacturers of the Accused Products are foreign manufacturers that are not subject to U.S. discovery procedures under the Federal Rules of Civil Procedure.

### B. Defendant imports products produced by Chinese manufacturers not subject to U.S. discovery.

Two agreements govern the ability of the U.S. courts to compel discovery including depositions in China. Neither agreement provides an avenue for reasonable discovery in this matter. *Truitt Decl.* ¶ 5.

Article 27(1) of the U.S.-China Consular Convention of 1980 allows consular officers of either nation to take and witness statements and testimony for use in connection with a legal proceeding of either nation; 33 U.S.T. 3048. China clarified this Convention in a series of diplomatic notes from the Chinese Ministry of Foreign Affairs to the U.S. Embassy in Beijing. The Chinese government stated that depositions under oath may only be taken by a U.S. Consular official or foreign

1  attorney if, and only if, Beijing first gives express permission after receiving a letter
2  rogatory through the Bureau of International Judicial Assistance of the Ministry of
3  Justice of the People's Republic of China. (Diplomatic Note No. 106 dated 6
4  November 1981, Diplomatic Note No. 88 dated 11 September, and Diplomatic Note
5  No. 77 dated 11 September 1996). *Truitt Decl.* ¶ 6.

6  On only one occasion has the Chinese government ever granted permission for
7  a limited deposition. *United States v. Leung Pak Lun, et al* CR 88 0214-WHO. In
8  connection with this one deposition, China informed the U.S. government that the
9  grant of permission should not be construed as precedent. *Truitt Decl.* ¶ 7.

10  The second agreement governing discovery in China is The Hague Conference
11  on Private International Law Convention on the Taking of Evidence Abroad in Civil
12  or Commercial Matters. Upon China's accession to The Hague Evidence
13  Convention, China declared that the provisions of Chapter II of the Convention
14  except for Article 15 will not be applicable; China means that diplomatic and
15  consular officers may take evidence without compulsion of nationals of the United
16  States, only with express permission given upon application to the Chinese
17  government. *See* Dept of State, *China Judicial Assistance*, available at
18  http://travel.state.gov/law/info/judicial/judicial_694.html. No depositions have ever
19  been allowed under this Convention. Further, it is not possible for any U.S. Court to
20  compel production of evidence thereby. *Id*. *Truitt Decl.* ¶ 8.

21  The Chinese strictly guard the laws on administering and swearing of oaths.
22  This makes voluntary depositions between private parties both very difficult and a
23  criminal act. When foreign attorneys or consular officials administer an
24  unauthorized oath in China, the penalties include arrest, detention, expulsion, or
25  deportation of all participants in the oath. (http://travel.state.gov/law/info/
26  judicial/judicial_694.html). *Truitt Decl.* ¶ 9.

27  In *Popular Imports, Inc. v. Wong's Intern., Inc*., 166 F.R.D. 276 (E.D.N.Y.
28  1996) the court upheld the admissibility of depositions taken in China, without the

use of letters rogatory. However, this was only because the issue of legality had not been raised prior to the depositions and was deemed waived:

> Had plaintiff raised this issue prior to the taking of the depositions, and had the Court concluded that the procedures proposed would in fact have violated Chinese law, the Court would of course have been loathe to authorize procedures that would have put counsel at risk and might well have generated diplomatic friction.

*Id. at* 279. *Truitt Decl.* ¶ 10.

Requiring Plaintiff to file letters rogatory with the Chinese consulate, when there is no reasonable hope of assistance is beyond the scope of a "reasonable effort." Additionally, the only proper method for discovery in China is by submitting a letter rogatory and anything short of such effort would subject Plaintiff to criminal sanctions under Chinese law.

In short, Plaintiff will not be able to inspect plants, or conduct other compulsory discovery from the actual manufacturers of the Accused Products, and thus cannot obtain any first-hand information of the actual manufacturing process. Further, any information obtained from China is inherently unreliable due to the lack of any capacity of the Courts to enforce orders against any Chinese nationals or companies. This situation is exactly what 35 U.S.C. § 295 was designed to address.

C. Even if discovery were feasible it cannot be trusted as there is no enforcement of U.S. judgments in China.

U.S. judgments cannot and will not be enforced in China. Chinese law requires the existence of a treaty or de facto reciprocity in order to enforce a foreign judgment. Neither of this exists between the United States and China. *Truitt Decl.* ¶ 11.

Research reveals specific cases in which enforcement was refused and no cases in which enforcement was granted. *See* Clarke, Donald C., "The Enforcement of United States Court Judgments in China: A Research Note" (May 27, 2004).

GWU Legal Studies Research Paper No. 236 Available at SSRN: http://ssrn.com/abstract=943922. *Truitt Decl.* ¶ 12.

Without the penalty of perjury or the threat of court sanction, no evidence gathered in China, via deposition or any other mechanism can be trusted. As the Court lacks any power to enforce its edicts against Chinese witnesses or companies, any evidence obtained thereby should be treated as so untrustworthy as to be deemed inadmissible.

> D. <u>Plaintiff has made reasonable efforts to determine the process, but has been unable to obtain necessary information.</u>

The legislative history gives guidance as to what constitutes a reasonable effort:

> For a foreign manufacturer the patentee would have to take some reasonable step, such as writing to the manufacturer, to determine how the product was made and to have been unsuccessful in this regard.

S. REP. NO. 100-83, at 45 (1987).

In *Pfizer Inc. v. F & S Alloys and Minerals Corp*, 856 F.Supp. 808 (S.D.N.Y., 1994.) the Court ordered the burden shifted to the defendant to prove that it did not infringe pursuant to section 295 on similar facts. In that case, Pfizer sued the importer of an infringing chemical agent and the foreign manufacturer (Chinese). However, the Chinese manufacturer was dismissed from the case on jurisdictional grounds, as it did not actively import the infringing product into the U.S. Pfizer's attempted discovery directed to the Chinese company resulted in nothing but letters from the Chinese company with unsupported denials of infringement. *Id.* The Court ordered the section 295 presumption against the importer as they were the party best able to obtain evidence of the process actually used. *Id.* In view of fact that discovery in China suffers the triple whammy of being: criminal, impracticable and untrustworthy; the section 295 presumption is the only viable manner such a dispute can be resolved.

1    Here, Plaintiff is in similar situation. Plaintiff made a formal, written request for information from Lexar that would allow it to determine the process actually used in production of the Accused Products. Lexar confirmed that it was not the actual manufacturer (it referenced two suppliers), but failed to identify the suppliers or provide the claimed written confirmations from those manufacturers. Despite ongoing communications between the parties for three years, Plaintiff has still received nothing beyond unsworn second-hand hearsay assertions as to the actual process.

Lexar was again advised of Plaintiff's intent to invoke the 35 U.S.C. § 295 presumption against Lexar if properly verified process information was not provided by letter dated December 12, 2007. *Kramer Decl.* ¶ 7.

Despite the passage of more than three years since the original request and notification regarding 35 U.S.C. § 295, Lexar has never provided any verified description of the manufacturing process, never identified the name(s) or location(s) of its manufacturer(s), never provided any photographs, mold designs, product specifications, nor any other information or materials that would allow Plaintiff to determine the process actually used to manufacture the Accused Products.

Plaintiff has made reasonable efforts to determine the process actually used in the production of the product, but has been unable to so determine. Plaintiff need not blindly accept unsworn statements and purported second-hand hearsay information from unnamed suppliers. Furthermore, because the actual manufacture of the Accused Products occurs in China, Plaintiff will not be able to obtain any reliable information through discovery for the reasons set forth in detail above, making the issue of application of the 35 U.S.C. § 295 presumption ripe for immediate decision by this Court.

**CONCLUSION**

Plaintiff has established through expert testimony and documentary evidence

1  that a substantial likelihood exists that the '184 patented process was used in the manufacture of the Accused Products. Plaintiff has taken reasonable, but unsuccessful, efforts to ascertain the actual manufacturing information for the Accused Products.

There is no reasonable avenue for additional discovery as the Accused Products are manufactured in China. Therefore, Plaintiff has met its burden under 35 U.S.C. § 295 and the Court should issue an order invoking the burden shifting provisions of 35 U.S.C. § 295, requiring Defendant Lexar to prove that the Accused Products were not made with the '184 patented process.

DATED this Tuesday, May 20, 2008.

                JENS ERIK SORENSEN, as Trustee of
                SORENSEN RESEARCH AND DEVELOPMENT
                TRUST, Plaintiff

                /s/ J. Michael Kaler
                J. Michael Kaler, Esq.
                Melody A. Kramer, Esq.
                Attorney for Plaintiff