1  JARED BOBROW (Bar No. 133712)
   jared.bobrow@weil.com
2  JOSEPH H. LEE (Bar No. 248046)
   joseph.lee@weil.com
3  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
4  Redwood Shores, CA  94065
   Telephone: (650) 802-3000
5  Facsimile: (650) 802-3100

6  KEVIN KUDLAC (*pro hac vice* pending)
   kevin.kudlac@weil.com
7  WEIL, GOTSHAL & MANGES LLP
   8911 Capital of Texas Highway
8  Building One, Suite 1350
   Austin, TX 78759
9  Telephone: (512) 349-1930
   Facsimile: (512) 527-0798

10

   Attorneys for Defendant
11 LEXAR MEDIA, INC.

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15

16 JENS ERIK SORENSEN, as Trustee of        Case No. C08-00095 JW RS
   SORENSEN RESEARCH AND
17 DEVELOPMENT TRUST,                        DEFENDANT LEXAR MEDIA'S
                                             OPPOSITION TO PLAINTIFF'S
18              Plaintiff,                    MOTION FOR APPLICATION OF 35
                                             U.S.C. § 295 PRESUMPTION OF
19      v.                                   INFRINGEMENT

20 LEXAR MEDIA, INC., a Delaware corporation;  Date:        June 30, 2008
   and DOES 1 - 100,                           Time:        9:00 a.m.
21                                             Courtroom:   8, 4th Floor
              Defendants.                      Judge:       Hon. James Ware
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    ISSUE TO BE DECIDED ............................................................................. 1

4    II.   STATEMENT OF FACTS .......................................................................... 1

     III.  INTRODUCTION ....................................................................................... 2
5
     IV.   PLAINTIFF'S MOTION IS PREMATURE ............................................... 4
6
           A.    Claim Construction Is Required Prior To A Determination Under 35
7                U.S.C. § 295 ......................................................................................... 4

8          B.    Application of 35 U.S.C. § 295 Is Premature If An Opportunity For
                 Discovery Exists .................................................................................. 6
9
     V.    PLAINTIFF HAS FAILED TO MEET THE REQUIREMENTS OF 35 U.S.C.
10         § 295 ........................................................................................................... 8

11         A.    Sorensen Has Failed To Show That A Substantial Likelihood Exists That
                 The Accused Product Was Made By A Process Claimed By The '184
12               Patent .................................................................................................... 8

13         B.    Sorensen Has Failed To Make A Reasonable Effort To Determine The
                 Process Actually Used To Produce The Accused Product ................... 12
14
     VI.   CONCLUSION .......................................................................................... 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*
  239 F.3d 1343 (Fed. Cir. 2001) ................................................................ 3, 4

5

*Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.,*
  CIV. A. No. 95-218-SLR, 1996 WL 621837 (D. Del. Oct. 21, 1996).................4, 5, 9, 14

6

7

*Aventis Pharms., Inc. v. Barr Labs., Inc.*
  411 F. Supp. 2d 490 (D.N.J. 2006) ...................................................... passim

8

*Nutrinova Nutrition Specialties and Food Ingredients GMBH v. ITC*
  224 F.3d 1356 (Fed. Cir. 2000) ............................................................ passim

9

10

*Pfizer Inc. v. F & S Alloys and Minerals Corp.*
  856 F. Supp. 808 (S.D.N.Y. 1994)............................................................ 9, 12

11

12

*Rohm & Haas Co. v. Brotech Corp.*
  127 F.3d 1089 (Fed. Cir. 1997) ................................................................ 5, 8

13

*Sorensen v. The Black & Decker Corp.*
  Case No. 06cv1572 ........................................................................ 4, 5, 15

14

**FEDERAL STATUTES AND OTHER LEGISLATIVE AUTHORITIES**

15

35 U.S.C. § 295 ........................................................................... passim

16

S. Rep. No. 100-83 (1987) ............................................................... 6, 9, 15

17

**OTHER AUTHORITIES**

18

*Fang Shen, Comment: Are You Prepared For This Legal Maze? How To Serve Legal
  Documents, Obtain Evidence, and enforce Judgments in China,* 72 UMKC L. Rev.
  215, 238 (2003) ................................................................................. 7

19

20

21

22

23

24

25

26

27

28

I.    **ISSUE TO BE DECIDED**

Whether the product accused by the Plaintiff should be presumed to have been made by a process claimed by U.S. Patent No. 4,935,184 ("the '184 patent") under 35 U.S.C. § 295, despite the fact that this litigation is in its early stages, the Plaintiff has failed to pursue discovery related to the process used to manufacture the accused product in this action, the patent-in-suit is subject to multiple re-examinations by the United States Patent and Trademark Office ("PTO"), the claims of the patent have not yet been construed, and Plaintiff has, at best, performed only a cursory analysis of the accused product.

II.    **STATEMENT OF FACTS**

On April 16, 2005, Sorensen Research and Development Trust ("Sorensen") sent Lexar Media, Inc. ("Lexar") a letter informing it of the '184 patent in connection with the process used by Lexar or its foreign suppliers to manufacture the LEXAR MEDIA JumpDrive 128MB ("Accused Product"). (Ashmore Decl.[1] ¶ 2.) During the course of the subsequent pre-suit discussions between Lexar and Sorensen, Lexar provided information concerning the process used to manufacture the Accused Product. (*Id.* ¶ 3.) Sorensen admitted that, if this information was accurate in its description of the manufacturing process, then the process used to manufacture the Accused Product would not infringe the '184 patent. (*Id.* ¶ 4.) Sorensen indicated that an affidavit from a U.S.-based Lexar employee, using language provided by Sorensen, that the process used to make the Accused Product did not infringe the process claimed by the '184 patent, would be sufficient to overcome any presumption of infringement Sorensen held. (*Id.* ¶ 5.) Lexar offered to provide to Sorensen copies of correspondence with Lexar's suppliers confirming that the process used by the suppliers to manufacture the Accused Product did not infringe the claimed process. (*Id.* ¶ 6.) Lexar offered to provide this correspondence if Sorensen and Sorensen's counsel would agree: (1) to keep the information confidential and accessed only by Sorensen and Sorensen's counsel; (2) to never use the information for any purpose other than

---

[1] All references to the Ashmore Decl. are to the Declaration of David Ashmore in Support of Defendant Lexar Media's Opposition to Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption of Infringement, filed concurrently with this brief.

1    evaluating Sorensen's infringement allegations against Lexar concerning the patent-in-suit; (3)

2    that Lexar had not waived any privileges by sharing the information; and (4) that Sorensen would

3    never claim any waiver as a result of Lexar's sharing the correspondence with Sorensen.  (*Id.*

4    ¶ 7.)  Sorensen refused to agree to those conditions.  (*Id.* ¶ 8.)

5            On January 7, 2008, Plaintiff Jens Erik Sorensen, as Trustee of Sorensen Research

6    and Development Trust ("Plaintiff") filed a Complaint for patent infringement against Lexar,

7    asserting the '184 patent.  U.S. District Court California Northern District (San Jose), Civil

8    Docket for Case #5:08-cv-00095-JW ("Docket"), Docket #1.  The parties have since met and

9    conferred per the Federal Rules of Civil Procedure and have initiated discovery.  (Lee Decl.[2] ¶ 2.)

10   On May 22, 2008, Plaintiff served a set of interrogatories on Lexar.  (*Id.*, Exh. A.)  None of the

11   interrogatories asked for information on the process used by Lexar or its suppliers to manufacture

12   the Accused Product.  (*Id.*)  Claim construction has not yet been scheduled, but the parties have

13   generally agreed to follow the schedule set by the Patent Local Rules.  (*Id.* ¶ 2.)

14   **III.    INTRODUCTION**

15           Plaintiff's request for application of 35 U.S.C. § 295 is premature.   Under 35

16   U.S.C. § 295:

17                  if the court finds—
                    (1) that a substantial likelihood exists that the [accused] product
18                  was made by the patented process, and
                    (2) that the plaintiff has made a reasonable effort to determine the
19                  process actually used in the production of the product and was
                    unable to so determine,
20                  the product shall be presumed to have been so made, and the burden
                    of establishing that the product was not made by the process shall
21                  be on the party asserting that it was not so made.

22   35 U.S.C. § 295.  Thus, Plaintiff must prove both a "substantial likelihood" of infringement and

23   that Plaintiff has made a "reasonable effort" to determine the process used to make the Accused

24   Product.  Inherent in both the "substantial likelihood" and "reasonable effort" elements of § 295

25   is that litigation has proceeded far enough to make such determinations.  Such is not the case

26   here.  To determine whether an accused product is made by a process that infringes, a two step

27   _____

     [2] All references to the Lee Decl. are to the Declaration of Joseph H. Lee in Support of Defendant
28   Lexar Media's Opposition to Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption
     of Infringement, filed concurrently with this brief.

analysis must occur. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). "[T]he claim scope is first determined, and then the properly construed claim is compared with the accused device [or process] to determine whether all of the claim limitations are present." *Id.*  Without the benefit of claim construction, it is not possible to determine whether a product has been made by a patented process or even whether a "substantial likelihood" exists that the accused product was made by the patented process.  Similarly, if plaintiff's discovery into the details of the accused process has yet to substantially begin—or, as we have here, has not even been attempted—it is not possible to determine whether a reasonable effort has been made to determine the process actually used to manufacture an accused product.[3]  Here, initial disclosures have not been made, and the initial case management conference has not yet been held.  The parties have also yet to begin the process mandated by the Patent Local Rules that leads up to claim construction.  As discovery has just begun and as claim construction has yet to take place, it is premature to determine under § 295 whether the Accused Product should be presumed to be made by the claimed process.  *Cf.* Petrie Depo.[4] at 69:6-23 (Sorensen's counsel objected to questions seeking a comparison of the asserted claims with the accused process as premature in light of the timetable provided in the Patent Local Rules).  Plaintiff's motion should therefore be denied as premature.

Even if Plaintiff's motion were not premature, it should be denied as Plaintiff has failed to show that the requirements of 35 U.S.C. § 295 have been met.  Plaintiff has failed to show that a substantial likelihood exists that the Accused Product is manufactured using the claimed process.  The Plaintiff has also failed to show that it has made a reasonable effort to determine the process used to manufacture the Accused Product, limiting its inquiry to a cursory examination of the Accused Product (as demonstrated by the conclusory declaration of Sorensen's expert, Dr. Petrie) and a pre-litigation exchange of letters with Lexar.  As a result, if

---

[3] In addition, as explained more fully *infra*, because Plaintiff has failed to attempt any discovery into the accused process despite a continuing opportunity to do so, to the extent an analysis under § 295 can, or even should, be made, Plaintiff has failed to show he has made a reasonable effort to determine the process used to manufacture the Accused Product.

[4] All reference to the Petrie Depo. are to the Deposition of Stephen Paul Petrie, Ph.D., taken on June 4, 2008, attached as Exhibit F to the Lee Decl.

1   Plaintiff's motion is to be decided on the merits, it should be denied.

2   **IV.    PLAINTIFF'S MOTION IS PREMATURE**

3           Inherent in the application of 35 U.S.C. § 295 is an expectation that litigation has

4   proceeded to the point where a determination can be made as to whether the requirements of the

5   statute have been satisfied.  That point, while not necessarily fixed in time, occurs after both

6   claim construction and substantial opportunity for discovery have occurred.  As neither of those

7   events has yet to occur in the present case, Plaintiff's motion is premature.

8           **A.    Claim Construction Is Required Prior To A Determination Under 35 U.S.C.**
9           **§ 295**

10          Claim construction is inherent in the "substantial likelihood" prong of the § 295

11  analysis.  In determining infringement, a determination must first be made as to scope of the '184

12  patent claims.  *Amazon.com*, 239 F.3d at 1351.  An analysis to determine whether a substantial

13  likelihood exists that the Accused Product is made using the patented process is conducted in the

14  same way as a traditional infringement analysis.  *See*, *e.g.*, *Sorensen v. The Black & Decker*

15  *Corp.*, Case No. 06cv1572 BTM (CAB) (S.D. Cal. Dec. 29, 2006) (order denying Sorensen's

16  motion for § 295 presumption, in part because of the need to first construe the claims) (Lee Decl,

17  Exh. B); *Aventis Pharms., Inc. v. Barr Labs., Inc.*, 411 F. Supp. 2d 490 (D.N.J. 2006) (requiring

18  preliminary claim construction in determining whether product substantially likely to infringe for

19  preliminary injunction and § 295 analysis); *Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.*,

20  CIV. A. No. 95-218-SLR, 1996 WL 621837, at *12 (D. Del. Oct. 21, 1996) (conducting § 295

21  analysis after claims were construed) (Lee Decl., Exh. C).  *Cf. Amazon.com*, 239 F.3d at 1350-51

22  (finding that two-step claim infringement analysis, beginning with claim construction, should be

23  used in preliminary injunction analysis).  Without knowing the scope of the claims of the '184

24  patent and the meaning of the terms therein, it is not possible to determine whether the process

25  used to make the Accused Product falls within its scope or is substantially likely to fall within its

26  scope.

27          Plaintiff, perhaps recognizing the difficulties he faces in bringing his motion prior

28  to claim construction, studiously avoids any discussion of how the terms of the '184 patent should

DEFENDANT LEXAR MEDIA'S OPPOSITION TO PLAINTIFF'S
MOT. FOR APPLICATION OF 35 U.S.C. § 295            4            Case No. C08-00095 JW RS

1   be construed. But by doing so, the Plaintiff relies on merely conclusory statements made by

2   Sorensen's expert that fail to provide any meaningful analysis as to whether the Accused Product

3   is made using the patented process. *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092

4   (Fed. Cir. 1997) ("Nothing in the rules or in our jurisprudence requires the fact finder to credit the

5   unsupported assertions of an expert witness"); *Aventis*, 411 F. Supp. 2d at 511 ("the Court need

6   not credit unsupported conclusions"); *Ajinomoto*, 1996 WL 621837, at *12 (finding that

7   inventor's conclusory statement that the accused product falls within the patent is insufficient to

8   establish a substantial likelihood of infringement). For example, Plaintiff states that the "first

9   plastic material component has at least one stabilizing region." (Amended Memorandum of

10  Points and Authorities in Support of Plaintiff's Motion for Application of 35 U.S.C. § 295

11  Presumption of Infringement, Docket No. 31-2, p. 6.) This language tracks the language of Claim

12  1 of the '184 patent, but it fails to address what constitutes a "stabilizing region" for purposes of

13  the '184 patent.[5] Without this information, it is impossible to determine whether Plaintiff's

14  assertion regarding the presence of a stabilizing region is correct.[6] The same problem exists with

15  the rest of Plaintiff's analysis.

16          The result of Plaintiff's prior attempt to bring an early § 295 motion is instructive

17  in explaining why no attempt at construing the claims was made and the court's reasoning in that

18  case is equally applicable here. In *Sorensen v. The Black & Decker Corp.*, Sorensen brought a

19  similar motion and explicitly acknowledged that claim construction was required in order to make

20  a determination under § 295. *Sorensen v. The Black & Decker Corp.*, Case No. 06cv1572 BTM

21  (CAB) (S.D. Cal. Dec. 29, 2006) (order denying Sorensen's motion for § 295 presumption, in part

22  because of the need to first construe the claims) (Lee Decl., Exh. B). That motion was denied

23  because claim construction had not yet occurred. *Id.* Here, Plaintiff's expert did not explicitly

24  construe the claims. Petrie Depo. at 77:15-22. But, in order to properly evaluate the comparison

---

[5] Lexar does not assert that "stabilizing region" is a term to be construed as it has yet to complete its analysis of the '184 patent for purposes of claim construction.

[6] In addition, Plaintiff fails to identify what structure in the Accused Product is a "stabilizing region." Further, Plaintiff fails to identify what structure in the Accused Product is the "first plastic material." As discussed *infra*, these conclusory statements are insufficient to meet Plaintiff's burden.

1   done by the Plaintiff's expert of the claimed process to the process supposedly used to make the

2   Accused Product, the claims must be construed to determine their scope. That the need for claim

3   construction is implicit, rather than explicit, in the current motion should not change the

4   reasoning behind finding a motion for application of § 295 premature prior to claim construction.

5   Plaintiff should not be rewarded in this case for providing less support for its application of the

6   claims to the Accused Product and process than it provided in its previous motion, which was

7   denied as premature.

8          **B.**     **Application of 35 U.S.C. § 295 Is Premature If An Opportunity For Discovery**
9                     **Exists**

10       Sorensen's motion is premature because there is still a reasonable possibility that

11   through discovery in this case he will be able to determine the process by which the Accused

12   Product is manufactured. 35 U.S.C. § 295 is intended to aid litigants who are unable to determine

13   whether a product is made by a patented process after reasonable effort. "The reasonableness of

14   the effort would include the use of discovery procedures under the Federal Rules of Civil

15   Procedure or other good-faith methods." S. Rep. No. 100-83, at p.33 (1987) (Lee Decl, Exh. D).

16   For example, the Senate, in discussing § 295, specifically considered the use of protective orders

17   as one way to encourage foreign manufacturers to supply information to the patentee. *Id.* In

18   effect, § 295 serves a punitive purpose in aiding patentees and courts by serving as a "mechanism

19   for enforcing [the courts'] processes and orders" by punishing litigants for failures of discovery.

20   *Nutrinova Nutrition Specialties and Food Ingredients GMBH v. ITC*, 224 F.3d 1356, 1360 (Fed.

21   Cir. 2000). All the District Courts that have made a determination as to whether § 295 applies

22   have done so only after the patentee has attempted to obtain discovery. Sorensen, in contrast, has

23   yet to seek **any** discovery concerning the process used to manufacture the Accused Product.

24       Here, Sorensen attempts to invoke § 295 despite the opportunity he has to pursue

25   discovery in this case. Sorensen tries to justify his premature attempt to secure the § 295

26   presumption by declaring attempts at discovery from non-parties to be futile and by implicitly

27   declaring that attempts at discovery from Lexar will be equally futile. The Federal Circuit

28   rejected this argument in *Nutrinova*. *Id.* In *Nutrinova*, the patentee encountered numerous

difficulties in obtaining discovery from Sanhe, a Chinese company. *Id.* at 1358. These difficulties included refusing to produce documents and refusing a plant inspection on the basis that it might violate Chinese law. *Id.* Ultimately, Sanhe did cooperate, after the ITC judge compelled discovery. *Id.* Despite these difficulties, including the refusal to allow inspection because of Chinese law, the Federal Circuit found that the ITC had no obligation to rule on whether § 295 applied during discovery and prior to trial, even if it might have saved "Nutrinova from all the exasperation of Sanhe's limited and slow production." *Id.* at 1360. It may turn out that, after using the tools of discovery available to him, Sorensen is unable to determine the process used to manufacture the Accused Product. If that turns out to be the case, he can renew his motion at that point. But that point has not yet been reached.

Furthermore, Sorensen's argument regarding the futility of discovery is flawed. First, he fails to consider that information regarding the manufacturing process that could be sought from Lexar through discovery (which Sorensen has notably failed to request) may be sufficient to identify the process used.[7] Second, Sorensen fails to consider that alternatives to compulsory depositions in China exist. For example, any Chinese nationals that need to be deposed could voluntarily fly to another country that allows for depositions. *See* Truitt Decl.[8], Exh. A, at p. 3 ("If the witness is willing to be deposed, one option might be to persuade the witness to travel to another country"); Fang Shen, *Comment: Are You Prepared For This Legal Maze? How To Serve Legal Documents, Obtain Evidence, and enforce Judgments in China*, 72 U.M.K.C.L. Rev. 215, 238 (2003) (noting that Hong Kong is often used as a jurisdiction in which depositions of Chinese nationals are taken). Again, notably, Sorensen has failed to inquire about obtaining such depositions. Or Sorensen could inspect the manufacturing facilities where the

---

[7] It is notable in this respect that Sorensen has previously indicated that it would be satisfied that the patented process was not used if Lexar would provide "admissible evidence," such as an affidavit from a U.S.-based Lexar employee to that effect. While § 295 does not require the accused infringer to provide any evidence of non-infringement, let alone admissible evidence from a U.S. source, and Sorensen's intent in requesting this affidavit was to seek evidence to overcome the § 295 presumption, Sorensen would not run afoul of any foreign discovery limitations in pursing discovery to obtain such evidence from Lexar.

[8] References to the Truitt Decl. are to the Declaration of Edward Truitt in Support of Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption of Infringement, submitted by Plaintiff on April 11, 2008 (Docket No. 20).

product is made.  Once again, Sorensen has failed to request such inspections.[9]  Documents can also be produced to Sorensen from the manufacturers that disclose the process used.  Such alternatives were used in other cases in which an analysis under § 295 was made.  *See*, *e.g.*, *Nutrinova*, 224 F.3d at 1358 (describing patentee's receipt of documents from and inspection of the facilities of a Chinese manufacturer).  Sorensen has made no attempt to pursue these options, nor has the Plaintiff asked Lexar to inquire about these alternative discovery possibilities with its suppliers.

As claim construction has yet to take place and as Sorensen has yet to pursue discovery to determine the process used to manufacture the Accused Product, Lexar respectfully requests that Plaintiff's motion be denied.

## V.  PLAINTIFF HAS FAILED TO MEET THE REQUIREMENTS OF 35 U.S.C. § 295

Even if the Court elects to consider Sorensen's motion on the merits despite its premature nature, Sorensen's motion should be denied because Sorensen has failed to show that the requirements of § 295 are met.  Sorensen has failed to show that it is substantially likely that the Accused Product is manufactured using a process claimed by the '184 patent and has failed to show that he has made a reasonable effort to determine the process used in the production of the Accused Product.

### A.  Sorensen Has Failed To Show That A Substantial Likelihood Exists That The Accused Product Was Made By A Process Claimed By The '184 Patent

Sorensen relies on the unsupported and conclusory testimony of its expert that the Accused Product is substantially likely to be made using an infringing process, but this evidence is insufficient.  In order to show that a product is substantially likely to be made using an infringing process, the patentee must do more than merely declare the possibility that the product is made by an infringing process.  *See*, *e.g.*, *Rohm & Haas*, 127 F.3d at 1092 ("Nothing in the rules or in our jurisprudence requires the fact finder to credit the unsupported assertions of an expert witness"); *Aventis Pharms.*, 411 F. Supp. 2d at 511 (rejecting experts' conclusions because

---

[9] Dr. Petrie not only appears to be capable of going to China or Taiwan for any such inspections,. Petrie Depo. at 21:6-14, but he has previously been to China (albeit twenty years ago) and has inspected manufacturing facilities there.  *Id.* at 20:8-10.

1    they were unsupported); *Ajinomoto*, 1996 WL 621837, at \*12 (finding that inventor's conclusory

2    statement that the accused product falls within the patent is insufficient to establish a substantial

3    likelihood of infringement).  While less than the burden to prove actual infringement, the proof

4    required to show substantial likelihood of infringement is substantial.  S. Rep. No. 100-83 p. 33

5    (1987) ("Presumptions of manufacture by a patented process [] should not be casually

6    established.") (Lee Decl., Exh. D).  In *Pfizer Inc. v. F & S Alloys and Minerals Corp.*, 856 F.

7    Supp. 808 (S.D.N.Y. 1994), one of only two cases that were located in which the § 295

8    presumption was applied by a District Court, the court relied on information gathered during

9    multiple factory visits and a detailed analysis by the patentee's expert of the accused product and

10   the information from the factory visits, including an analysis explaining why it is unlikely other

11   methods of manufacturing the accused product were economical, in order to justify a finding that

12   a substantial likelihood exists of infringement.  *Id.* at 811-15.  Here, in contrast, Sorensen's expert

13   admits that he provided no basis for his statement that the only commercially practical processes

14   in which to make the Accused Product are processes that infringe Claim 1 of the '184 patent.

15   Petrie Depo. at 95:23-96:3.  *See also Aventis*, 411 F. Supp. 2d at 513 (distinguishing *Pfizer* as

16   relying on evidence gathered during a factory visit).

17          Dr. Petrie essentially admits his analysis is unsupported.  His investigation

18   consisted of a visual inspection of the Accused Product.  Petrie Depo. at 53:23-54:6.  He also

19   "scraped" the Accused Product in an attempt to determine how the parts of the Accused Product

20   were put together.  *Id.* at 54:11-55:1.  He also examined the Accused Product to determine where

21   it was gated, which is the area where the plastic is injected into the mold.  *Id.* at 56:14-57:13.

22   None of these steps, however, are sufficient to establish that it is substantially likely that the

23   Accused Product was made using a process claimed by the '184 patent as opposed to a non-

24   infringing process, such as a multiple single-shot process.[10]  *See id.* at 79:1-4 (admitting that a

25   multiple single-shot process would not use the claims of the '184 patent).  The examination Dr.

26   Petrie conducted to determine the location of the gate is insufficient to determine whether a

27

28   [10] Of note is that Dr. Petrie admits that he failed to provide even this level of support for his
     analysis when he submitted his declaration.  Petrie Depo. at 64:12-65:20.

1    process patented by the '184 patent was used or whether it was a non-infringing multiple single-
2    shot process. *Id.* at 82:24-83:16 (admitting that a multiple single-shot process might be gated the
3    same way as a process claimed by the '184 patent). Dr. Petrie also admitted that the paucity of
4    the analysis he did made it difficult to determine for a fact how the Accused Product was put
5    together, requiring him to "guess or opine." *Id.* at 55:2-7; 97:20-98:5. And the visual inspection,
6    far from supporting his conclusion that the Accused Product was substantially likely to be made
7    using a process claimed by the '184 patent, actually supports the opposite conclusion. Dr. Petrie
8    believes that the most likely commercially available processes would all use robots. *Id.* at 97:20-
9    98:13. Yet, despite his visual examination, he was unable to find any markings that would
10   indicate robots were used to make the Accused Product. *Id.* at 98:14-18. Dr. Petrie also admitted
11   that a non-infringing multiple single-shot process would not necessarily use robots and would
12   therefore not leave a corresponding mark. *Id.* at 98:19-99:6. If the evidence supports a finding
13   that a process other than the one claimed is used, a substantial likelihood does not exist that the
14   accused product is made using the claimed process. In *Aventis*, the court rejected the experts'
15   conclusory determinations and examined the underlying evidence. 411 F. Supp. 2d at 511-12.
16   Finding that the evidence was consistent with either the claimed process or a non-infringing
17   process, the court concluded that the patentee had failed to show that it was substantially likely
18   the claimed process was used. Here, not only does the evidence support the conclusion that a
19   process not claimed by the '184 patent was used, the lack of a marking indicating use of robots
20   tends to make it more likely that a non-infringing process was used. *Cf. Nutrinova*, 224 F.3d at
21   1360 (in rejecting application of § 295 for failure to satisfy second prong of statute, the lower
22   court properly relied on evidence that the accused products did not contain characteristics
23   indicating it had been made using the claimed process).

24          Other examples exist of the differences between the process used to make the
25   Accused Product and the claimed process. For instance, step (f) of Claim 1 of the '184 patent
26   requires "solidifying the injected second plastic material so as to form a second plastic material
27   component that fuses with the first plastic material component to produce a hollow plastic
28   product." '184 Patent, 9:58-61 (Lee Decl., Exh. E). Yet Dr. Petrie admits that his comparison of

1    the claimed process to the process supposedly used to make the Accused Product would produce

2    a hollow product by, at the latest, step (d) of Claim 1.  *Compare* Petrie Depo. at 90:1-8, 10-25

3    (the Accused Product is hollow as the end of the step described in ¶ 49 of the declaration) *and*

4    Petrie Decl.[11] ¶¶ 49-50 (wherein ¶ 49 describes steps (a)-(c) of Claim 1 and ¶ 50 describes step

5    (d)) *with* '184 Patent, 9:40-61 (wherein the language of steps (a)-(c) correspond to the language in

6    ¶ 49 of the Petrie Decl. and the language of step (d) corresponds to the language in ¶ 50 of the

7    Petrie Decl. and the hollow product is formed as of step (f)) (Lee Decl., Exhs. E, F).  As Dr.

8    Petrie's own testimony contradicts the conclusion that the Accused Product is made using the

9    patented process, the Plaintiff has failed to show a substantial likelihood that the Accused Product

10   is manufactured using the process claimed by the '184 patent.

11          Sorensen cannot deny that processes other than those described by Dr. Petrie

12   and/or claimed in the '184 patent can be used to manufacture the Accused Product.    Indeed, Dr

13   Petrie admits that the Accused Product can be made using a non-infringing process.  Petrie Depo.

14   at 62:4-7.  To attempt to overcome this, Sorensen relies on Dr. Petrie's claim that the only

15   commercially practical process that could be used is the process claimed by the '184 patent.  But

16   Dr. Petrie has offered nothing of substance to support this conclusion.  Dr. Petrie admits that there

17   is nothing in his declaration that compares the use of a claimed process to the use of a non-

18   infringing multiple single-shot process.  *Id.* at 99:22-100:2.  Dr. Petrie also admits that a

19   substantial part of any analysis to determine whether a process is commercially practical is a cost

20   analysis, including the cost of labor.  *Id.* at 100:20-101:2.  Despite the importance of a cost

21   analysis to determining commercial practicality, Dr. Petrie did not conduct such an analysis.  *Id.*

22   at 100:15-19.  It is well known that part of the attraction of manufacturing goods in China is due

23   to the lower labor costs.  Given this, it may be reasonable to use a method of manufacture that is

24   more labor-intensive than the use of robots.  Yet  Dr. Petrie, despite recognizing the importance

25   of analyzing costs such as labor, fails to consider whether use of cheaper labor might make a

26   difference in whether a process is commercially practical.  Sorensen is undoubtedly relying on the

27   _____

[11]  References to Petrie Decl. are to the Declaration of Stephen Petrie, Ph.D., in Support of
28   Plaintiff's Amended Motion for Application of 35 U.S.C. § 295 Presumption of Infringement,
     submitted by Plaintiff on May 20, 2008 (Docket No. 31).

language in *Pfizer* finding that the claimed process was substantially likely to be used because it was the only commercially practical process. But in *Pfizer*, the court specifically mentioned that the patentee's expert's analysis was "persuasive **because** it takes into account the factors of cost and yield." *Pfizer*, 856 F. Supp. at 816 (emphasis added). Here, Dr. Petrie's analysis has no similar analytical grounding. Without more analysis than the unsupported one provided here, it cannot be concluded that the only commercially practical process than can be used in making the Accused Product is the process claimed by the '184 patent.

Lexar has also provided to Sorensen details on the actual process used to make the Accused Product sufficient to establish that the claimed process is not used. (Ashmore Decl. ¶¶ 3-4.) Under § 295, if the patentee is able to determine the actual process used, it cannot take advantage of § 295. *Nutrinova*, 224 F.3d at 1360. As Sorensen is aware of the process used to manufacture the Accused Product, he cannot claim the benefit of § 295.

### B.    Sorensen Has Failed To Make A Reasonable Effort To Determine The Process Actually Used To Produce The Accused Product

In addition to failing to show a substantial likelihood that the Accused Product was made by the process claimed in the '184 patent, Sorensen has also failed to make a reasonable effort to determine the process used to produce the Accused Product. Sorensen's efforts have been limited to a cursory analysis (described in conclusory statements that merely, at best, parrot the words of the claim) and letters sent to Lexar asking for proof of non-infringement, the total of which fails to establish a reasonable effort to investigate.

As mentioned above, in order to show a reasonable effort to determine the actual process used, Sorensen must pursue available discovery. Discovery has begun and Sorensen has already begun to make discovery requests. Yet Sorensen has not requested discovery about the most fundamental fact relevant to this motion: the actual process used to manufacture the Accused Product. And even disregarding the failure to exercise his opportunity to investigate using discovery, Sorensen has failed to show how any of the other actions he has taken constitute a reasonable effort.

1    The analysis by Sorensen's expert barely qualifies as such. Dr. Petrie simply

2    asserts that he has examined the Accused Product and then repeats the elements of the '184

3    patent's claims, adding for each element that it is present in or is with high confidence likely to

4    have been used in manufacturing the Accused Product. He then concludes by stating that the only

5    commercially practical method than can be used to manufacture the product is the one claimed by

6    the '184 patent. At no point in his declaration does he explain the basis for his conclusion that a

7    particular element exists or is likely to exist in the Accused Product or the process used to make

8    it. Nor does Dr. Petrie identify where the particular element is located in the Accused Product,

9    nor does he explain why the claimed process is the only one that is commercially practical. *See*,

10   *e.g.*, Petrie Depo. at 64:12-65:20; 83:21-84:5; 85:13-17; 95:23-96:3; 99:22-100:2; 100:15-19. For

11   example, Dr. Petrie declares that in the Accused Product there is a "first plastic material" and a

12   "second plastic material." Petrie Decl. ¶¶ 49, 51. Yet he fails to identify, either textually or via

13   drawings or photographs, where the two plastic materials are in the Accused Product. Petrie

14   Depo. at 92:6-19.

15   Dr. Petrie recognizes that more could have been done to analyze the Accused

16   Product in an attempt to learn what process was used to manufacture it. For example, Dr. Petrie

17   acknowledges that he could have had the Accused Product analyzed by a laboratory to better

18   determine the method by which the Accused Product was assembled. *Id.* at 55:11-56:1. He

19   asserts that conducting this additional analysis is unnecessary, but that conclusion is unreasonable

20   in light of how "very difficult to say for a fact" how the Accused Product was assembled based on

21   just the work he had done. *Id.* at 55:2-12. In other instances in which Dr. Petrie had analyzed

22   molded products and processes, he had employed the use of analytical tools such as a polariscope,

23   scanning electron microscopy, and energy dispersive analysis. *Id.* at 35:18-36:5; 36:16-38:8. In

24   contrast, for his inspection of the Accused Product, he used a jeweler's loupe and a fingernail. *Id.*

25   at 53:23-55:1; 56:11-18.

26   It is not surprising that his examination was superficial. Dr. Petrie stated at his

27   deposition, taken on June 4, 2008, that he first saw the Accused Product "two or three weeks

28   ago." *Id.* at 52:13-18. Dr. Petrie's declaration was filed on May 20, 2008, 15 days prior to his

1    deposition.  Even crediting him with three weeks, he had less than one week to examine the

2    Accused Product before he submitted his declaration.  *See also id.* at 43:11-18 (stating that the

3    amount of time spent on cases involving Sorensen in the past year to be "very small").

4        Even if his analysis had taken place over years, instead of under a week, it would

5    not constitute a reasonable effort.  Dr. Petrie admits that other processes could have been used to

6    manufacture the Accused Product.  And he also admits that he was unable to find evidence, such

7    as marks left by use of robots, that would help establish that the claimed process was used to the

8    exclusion of other, non-infringing processes.  Dr. Petrie bases his claim that the process claimed

9    in the '184 patent was used on his gating analysis, yet admits that the gating for the Accused

10   Product could have been created using a non-infringing process as well.  *Compare id.* at 63:13-24

11   *with id.* at 82:24-83:16.  Despite the many signs indicating that other processes might have been

12   used to make the Accused Product, Dr. Petrie did not choose to conduct any further investigation.

13   He did not attempt to compare the Accused Product to other similar products.  *Id.* at 66:4-7; 97:4-

14   6.  He did not study injection molding processes used to form products such as the Accused

15   Product.  *Id.* at 97:1-3.  He did not try to determine what injection molding processes were

16   available in China between the years 2002 and 2008.  *Id.* at 66:8-12.  Nor did he conduct a cost

17   analysis, despite acknowledging that such analyses are a "substantial part" of any determination

18   as to whether a process is commercially practical.  *Id.* at 100:15-101:2.  *See also id.* at 95:23-96:2

19   (admitting that he provided no basis for his statement that only the claimed process is

20   commercially practical).  Despite this, he did not attempt any additional analysis that would

21   compare the claimed process with a non-infringing process.  *Id.* at 99:22-100:2.

22       As mentioned previously, courts have rejected such conclusory analyses as

23   insufficient.  *See*, *e.g.*, *Aventis Pharms.*, 411 F. Supp. 2d at 511 (rejecting experts' conclusions

24   because they were unsupported); *Ajinomoto*, 1996 WL 621837, at *12 (finding that inventor's

25   conclusion that the accused product fails within the patent does not constitute a reasonable effort).

26   When viewed in its totality, the evidence of record reveals that: (1) serious doubts exist as to

27   whether the "analysis" done by the Plaintiff was sufficient to determine whether the claimed

28   process was used; (2) substantial evidence exists that tends to show that the claimed process was

1   **not** used; and (3) Sorensen's expert was aware that additional methods of analysis existed and it

2   was unreasonable for Sorensen to not conduct additional analysis, such as the use of more

3   sophisticated inspection tools or cost analysis of non-infringing methods.

4           Sorensen's sending of letters to Lexar demanding that Lexar provide evidence that

5   its product is not made by an infringing process is also insufficient to show reasonable effort.

6   Lexar has no obligation to prove non-infringement.  Despite this, Lexar was willing to provide

7   documents and other evidence sufficient to establish that the method used by Lexar's suppliers

8   was not the process claimed by the '184 patent, subject only to non-disclosure provisions similar

9   to those in a typical patent litigation case.  (Ashmore Decl. ¶¶ 6-7.)  Lexar's conditions were

10  made to protect its suppliers in the same way a protective order would.  Sorensen, however,

11  refused to accept the offered information with this reasonable condition.  (Ashmore Decl. ¶ 8.)

12  This was so despite Sorensen's expert being familiar with and signing an agreement to comply

13  with provisions of protective order in prior cases.  *Id.* at 101:15-102:1.  Sorensen's refusal to

14  accept documents under confidentiality terms similar to a protective order shows that Sorensen

15  did not engage in a good faith effort to determine the process used to manufacture the Accused

16  Product.  *See* S. Rep. No. 100-83, p. 33 ("the Committee expects protective orders to be used . . .

17  to supply information pertinent to a process patent infringement suit").  Sorensen's refusal is

18  especially egregious in light of his agreement to similar terms in protective orders in other cases

19  he has litigated as well as his expert's willingness to agree to such terms.  *See*, *e.g.*, *Sorensen v.*

20  *The Black & Decker Corp.*, Case No. 06cv1572 BTM (CAB) (S.D. Cal. Dec. 12, 2006)

21  (Protective Order) (Lee Decl., Exh. G).

22  **VI.    CONCLUSION**

23          As Sorensen's motion is premature and as he has failed to show that there is a

24  substantial likelihood that the Accused Product is made using the patented process or that he has

25  made a reasonable effort to discover the process used to make the Accused Product, Lexar

26  respectfully requests that Sorensen's motion be denied.

27

28

1   Dated:  June 9, 2008                    WEIL, GOTSHAL & MANGES LLP

2

3                                           BY:      /s/ Jared Bobrow

4                                                    JARED BOBROW
                                                    jared.bobrow@weil.com

5                                                   Attorneys for Defendant,
                                                    LEXAR MEDIA, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28