JARED BOBROW (Bar No. 133712)
jared.bobrow@weil.com
JOSEPH H. LEE (Bar No. 248046)
joseph.lee@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

KEVIN KUDLAC (*pro hac vice*)
kevin.kudlac@weil.com
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway
Building One, Suite 1350
Austin, TX 78759
Telephone: (512) 349-1930
Facsimile: (512) 527-0798

Attorneys for Defendant
LEXAR MEDIA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>            Plaintiff,<br><br>      v.<br><br>LEXAR MEDIA, INC., a Delaware corporation; and DOES 1 - 100,<br><br>            Defendants. | Case No. C08-00095 JW RS<br><br>DEFENDANT LEXAR MEDIA'S SUPPLEMENTAL STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION FOR APPLICATION OF 35 U.S.C. § 295 PRESUMPTION OF INFRINGEMENT<br><br>Date:         September 8, 2008<br>Time:        9:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge:       Hon. James Ware |

As requested by the Court, Lexar Media, Inc. ("Lexar") respectfully submits this supplemental statement in opposition to Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption of Infringement ("Plaintiff's Motion").

Since the June 30, 2008 hearing on Plaintiff's Motion, Lexar has provided plaintiff Sorensen with sufficient information to determine the actual processes used to manufacture the product that plaintiff has accused of using an infringing process, namely, a plastic flash drive housing. Lexar has supplied this information through interrogatory responses, documents (including photographs of the tooling used to manufacture the housing), and deposition testimony. Furthermore, Lexar has offered to provide Sorensen with a physical inspection of the tooling used to manufacture the housing. As 35 U.S.C. § 295 requires that plaintiff be unable "to determine the process actually used in the production of the product," plaintiff cannot rely on § 295 to shift the burden of proving the issue of infringement to Lexar. 35 U.S.C. § 295. Furthermore, to the extent additional discovery is necessary to determine further aspects of the process used to manufacture the housing, plaintiff has failed to show that reasonable efforts to determine the process would not be successful. Accordingly, Plaintiff's Motion should be denied.

## I. LEXAR HAS PROVIDED SUFFICIENT INFORMATION TO SORENSEN TO DETERMINE THE ACTUAL PROCESS USED TO MANUFACTURE THE HOUSING

Although this case is in its very early stages, Lexar has already produced sufficient information for plaintiff to determine the actual process used to make the plastic housing. Sorensen first served interrogatories and document requests concerning the details of the manufacturing process of the plastic flash drive housing on Lexar on July 7, 2008. On July 21, 2008, Sorensen served a deposition notice under Federal Rule of Civil Procedure 30(b)(6) to Lexar regarding the details of the manufacturing process. In response to those discovery requests, Lexar has timely provided information on the processes used to make the plastic flash drive housing in multiple ways, including via responses to interrogatories, document production, and deposition testimony. In the face of the extensive evidence provided by Lexar to Sorensen regarding the housing's manufacturing processes, plaintiff cannot continue to argue that he is unable to determine the manufacturing process of the housing via discovery.

Lexar did not itself manufacture the housing nor the flash drive at issue in this case. Instead, it contracted with a separate company, PC Partners, that assembled the flash drive for Lexar. That company, in turn, subcontracted out the manufacture of various subcomponents of the flash drive, including the housing for the flash drive, which is the particular part that has been accused by plaintiff of being manufactured using an infringing process. Two of those subcontractors—AMCO, and ATG—in turn either manufactured the housing or hired yet another company to actually produce the housing.[1] As Lexar is at least twice removed from the manufacture of the housing, and as the housing was manufactured by multiple companies, Lexar has had to contact the companies in question to gather the information and evidence to show the process and tools used to manufacture the housing. With respect to the foreign manufacturers, AMCO and ATG, Lexar has collected documents from the manufacturers, interviewed individuals at the manufacturers with knowledge of the process used to make the housing, and visited manufacturing facilities and inspected tooling used by the manufacturers to make the housing. Lexar has turned over to Sorensen the information it has gathered from the manufacturers in response to Sorensen's discovery requests.

One of the ways in which Lexar has provided information on the process used to make the housing is via response to Sorensen's interrogatories. For example, Interrogatory No. 9 asks Lexar to "[d]escribe, step-by-step, the manufacturing process used for the flash drives, from plastic resin to completed product." In response to this interrogatory, Lexar has provided detailed information on the process used to manufacture the housing. (Suppl. Lee Decl.[2], Exhs. A, at pp. 5-6, and B, at pp. 5-9.) (Lexar's Responses to Plaintiff's Interrogatories No. 7-10, served on

---

[1] Through its ongoing investigation, Lexar's counsel has recently learned that a third supplier was used. That supplier, Fourté, is a U.S.-based company and the manufacture of the housing by Fourté was done in the United States. Accordingly, as 35 U.S.C. § 295 is intended as a remedy against foreign manufacture only, it does not apply to any products manufactured by Fourté. S. Rep. No. 100-83, at p. 33 (1987) (Declaration of Joseph H. Lee in Support of Defendant Lexar Media's Opposition to Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption of Infringement, Exh. D, p. 33) (filed on 6/9/08) (the "rebuttable presumption would be inapplicable if the defendant has used the process in the United States, or has derived the products directly or indirectly from a manufacturer who used the process in the United States.").

[2] All references to the Suppl. Lee Decl. are to the Declaration of Joseph H. Lee in Support of Defendant Lexar Media's Supplemental Statement in Opposition to Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption of Infringement, filed concurrently with this brief.

August 6, 2008, and Lexar's Amended Responses to Plaintiff's Interrogatories No. 7-10, served on August 28, 2008) (filed under seal). The details provided by Lexar in response to this interrogatory provide Sorensen with the information it needs to determine how the housing is made.[3]

Sorensen has also gained knowledge of the process used to make the housing from its deposition of Lexar's Fed. R. Civ. P. 30(b)(6) representative regarding the process used to make the housing. This deposition, which took place on August 22, 2008, provided plaintiff an opportunity to ask detailed questions about the process used to make the housing. Lexar's representative prepared for this deposition by talking with representatives from AMCO and ATG with knowledge of the process used to make the housing, talking to former employees of Lexar with knowledge of the processes used by the manufacturers, viewing photographs and video of the tooling and machines used to manufacture the housing, and reviewing documents and other material related to the manufacture of the plastic flash drive housing. At the deposition, in response to questions from Sorensen, Lexar's representative provided detailed information on the processes used to manufacture the housing. For example, Lexar's representative gave step by step instructions on how the housing was made, and also discussed the differences between the process used by the various suppliers. (*See, e.g.*, Suppl. Lee Decl., Exh. C, at 13:7-11, 34:11-35:24, 54:22-55:3, 56:15-25, 58:3-60:6, and 68:14-16) (excerpts of the August 22, 2008 deposition of Lexar's 30(b)(6) representative) (filed under seal).

Lexar has also produced numerous documents that help establish the process by which the housing is made. Lexar first served documents in response to plaintiff's requests for documents on July 22, 2008, and has since supplemented that production on August 19, 2008, August 20, 2008, and August 27, 2008. These documents include written descriptions of the process (*see, e.g.*, Suppl. Lee Decl., Exh. D) (filed under seal), pictures of the tooling and

---

[3] Lexar originally responded to Sorensen's Interrogatory No. 9 on August 6, 2008. After it had served its original response, and during the course of gathering information and preparing Lexar's representative regarding the processes used to manufacture the housing, Lexar acquired additional information regarding the processes used to make the housing. As described, *infra*, Sorensen received that additional information through the deposition testimony of Lexar's 30(b)(6) witness on August 22, 2008. Additionally, Lexar supplemented its response to Sorensen's interrogatories on August 28, 2008, per Fed. R. Civ. P. 26(e)(1).

1 injection molding machines used to manufacture the housing (*see, e.g.*, Suppl. Lee Decl., Exh. E)
2 (filed under seal), and video of an injection molding machine used to manufacture the housing[4]
3 (Suppl. Lee Decl., Exh. F) (filed under seal). In short, Lexar has provided to Sorensen more than
4 enough information for plaintiff to determine the process used to make the housing.
5      Finally, Lexar has also arranged for Sorensen to have an opportunity to visit the
6 location where tooling used to manufacture the housing is stored so that he can visually inspect
7 it.[5] While this inspection has yet to occur, Sorensen has previously indicated that such an
8 inspection would help him in his attempt to understand the process used to make the housing.
9 (Suppl. Lee Decl., Exh. G) (6/30/8 Hearing, at 19:17-23). While Lexar has produced sufficient
10 information about the process used by the manufacturers to make the housing, the inspection is
11 yet another way in which Sorensen can confirm his understanding.
12      As Sorensen knows how the housing is actually made, he cannot invoke the
13 presumption of infringement available under 35 U.S.C. § 295. In *Novo Nordisk of N.A., Inc. v.*
14 *Genentech, Inc.*, 77 F.3d 1364 (Fed. Cir. 1996), Genentech tried to preliminarily enjoin Novo
15 from importing human growth hormone ("hGH") into the United States. *Id.* at 1366. The Federal
16 Circuit, in deciding against granting the preliminary injunctive relief sought, found that 35 U.S.C.
17 § 295 was "inapplicable in the present case, *inter alia*, because Genentech was able to determine
18 the process used to manufacture hGH." *Id.* at 1368 n.6. Much like in *Novo*, here Sorensen is able
19 to determine the process used to manufacture the housing, and therefore § 295 is similarly
20 inapplicable. *See also Nutrinova Nutrition Specialties and Food Ingredients GmbH v. Int'l Trade*

---

[4] This video footage, while not of the injection molding machine in operation making the housing in question, but rather of a separate product made for another party and which is not at issue in this case, does show the machine being operated in the same manner as when it was making the housing in question.

[5] After seeking available dates from ATG, Lexar informed Sorensen that the molds held by ATG could be inspected on either September 1, 2008 or Setpember 2, 2008. Neither of the dates, which were chosen based on the availability of the supplier to allow for an inspection prior to the date for the continued hearing on this motion, were accepted by Sorensen. Lexar and Sorensen are currently working on determining an alternate date for inspection of the ATG tooling as well as a date for inspection of the AMCO tooling. While Lexar has yet to discuss scheduling a date for inspection of the Fourté tooling, Sorensen is free to subpoena Fourté, a U.S.-based company, directly for such an inspection.

1  *Comm'n*, 224 F.3d 1356, 1360 (Fed. Cir. 2000) ("To meet the second prong of § 295, Nutrinova
2  had to show it was unable to determine the particular processes used").

### II. SORENSEN HAS FAILED TO SHOW THAT THE PROCESS FOR MAKING THE ACCUSED PART CANNOT BE DISCOVERED AFTER A REASONABLE EFFORT

While Sorensen has been able to discover the actual process used to make the housing (which alone provides sufficient grounds to deny the motion), the discovery that has taken place in the past two months has shown that, far from being futile, a reasonable effort to obtain discovery in this action will yield the information plaintiff seeks regarding the manufacture of the housing, and therefore Plaintiff's Motion should be denied.

Lexar has fully cooperated with Sorensen to provide him with the information he seeks regarding the process for manufacturing the housing. Lexar has produced documents responsive to Sorensen's document requests concerning the process by which the housing is made, has answered Sorensen's interrogatories concerning the process, including supplementing or amending those responses as necessary, and has provided a representative to testify on the process at the request of Sorensen. Lexar has also offered an on-site inspection of the tooling used to manufacture the housing. If, despite learning about the process used to make the housing, Sorensen feels that there is additional information he needs to obtain above and beyond what Lexar has already provided or offered to provide, he can attempt to do so through additional discovery, much like he has to this point. Furthermore, in the course of litigating this suit, Lexar will continue its investigation of the factual issues in this case, including the process by which the housing is manufactured, and will, as necessary, supplement or amend the information it has already provided to Sorensen.

As a result, a failure to pursue additional discovery, if deemed necessary by Sorensen, would not constitute a reasonable effort under § 295. In *Nutrinova*, Sanhe, the accused infringer, initially refused to provide the discovery requested by Nutrinova, the patentee. 224 F.3d at 1358. Sanhe did not fully comply with Nutrinova's discovery requests until after the administrative law judge ("ALJ") handling the matter for the International Trade Commission granted a motion by Nutrinova to compel discovery. *Id.* On appeal, Nutrinova argued that the

ALJ should have "saved Nutrinova all from the exasperation of Sanhe's limited and slow production" by ruling on Nutrinova's motion to apply § 295 before Sanhe engaged in such tactics. *Id.* at 1360. The Federal Circuit rejected that argument. *Id.* The Court noted that § 295 "provides the trial court with a potent weapon to use against a **non-cooperative** defendant." *Id.* (emphasis added). The determination as to when a defendant might be so uncooperative as to justify consideration of § 295 is to be left to the trial court, and on that basis, the Federal Circuit rejected Nutrinova's argument that the ALJ should have ruled on Nutrinova's § 295 motion during discovery. *Id.*

Unlike Sanhe in *Nutrinova*, Lexar has produced substantial information to Sorensen in response to Sorensen's discovery without a motion to compel. If Sanhe's eventual begrudging and compelled compliance with discovery requests is insufficient to invoke consideration of § 295, Lexar's active cooperation with Sorensen's discovery requests cannot overcome the clear guidance from the Federal Circuit that § 295 is to be used as a tool against non-cooperative defendants.

### III. CONCLUSION

As Sorensen has knowledge of how the housing is manufactured and has failed to show that discovery would be futile in obtaining additional information about the process of manufacture, and for the additional reasons set forth in Lexar's Opposition to Motion for Application of 35 U.S.C. § 295 Presumption of Infringement, Lexar respectfully requests that Plaintiff's Motion be denied.

Dated: August 29, 2008                              WEIL, GOTSHAL & MANGES LLP


                                                    BY:     */s/ Jared Bobrow*
                                                            JARED BOBROW
                                                            jared.bobrow@weil.com

                                                    Attorneys for Defendant,
                                                    LEXAR MEDIA, INC.