J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
Email: michael@kalerlaw.com

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
Email: mak@kramerlawip.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>       Plaintiff<br><br> v.<br><br>LEXAR MEDIA, INC., a Delaware corporation; and DOES 1 – 100,<br><br>       Defendants.<br>_____<br>and related counterclaims.<br><br>_____ | ) Case No. C08-00095 JW<br>)<br>) **REDACTED – PUBLIC VERSION**<br>)<br>) **SUPPLEMENTAL BRIEF IN**<br>) **SUPPORT OF PLAINTIFF'S**<br>) **MOTION FOR APPLICATION OF**<br>) **35 U.S.C. § 295 PRESUMPTION OF**<br>) **INFRINGEMENT**<br>)<br>) Date: September 8, 2008<br>) Time: 9:00 A.M.<br>) Courtroom 8, 4th Floor<br>) Judge: The Hon. James Ware<br>)<br>) *Oral Argument is Respectfully Requested*<br>) *at Hearing on This Matter.*<br>) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iii

INTRODUCTION ...................................................................................... 1

FACTUAL SUMMARY ............................................................................. 2

    *Identification of Manufacturers* ........................................................ 2

    *Manufacturing Process Information* ................................................. 3

ARGUMENT ............................................................................................. 8

I.     DISCOVERY HAS PRODUCED ONLY INCONSISTENT, UNRELIABLE, HEARSAY EVIDENCE OF THE ACCUSED PROCESSES. ...................... 8

    A.    <u>Lexar has not produced complete, reliable, or internally consistent process information from its suppliers.</u>................................................ 10

        1.    No manufacturing process information has been provided as to the first supplier –                ................. 10

        2.    Only incomplete manufacturing process information was provided as to the second supplier –        ............................ 11

        3.    Vague, confusing, and facially unreliable evidence was provided as to the third supplier –    . ................................................ 11

    B.    <u>There are only hearsay representations from foreign national witnesses supporting Lexar's Description of the manufacturing process.</u> .......... 13

II.    DISCOVERY PROVIDES ADDITIONAL SUPPORT FOR THE "SUBSTANTIAL LIKELIHOOD OF INFRINGEMENT" PRONG OF 35 U.S.C. § 295 APPLICATION. .................................................................... 13

        1.    First Evidence of Common Mold Parts Usage by ATG – Photographs of Identical Mold Halves. ................................... 15

        2.    Second Evidence of Common Mold Parts Usage by ATG – Photographs of Identical Closed Molds.................................... 16

        3.    Third Evidence of Common Mold Parts Usage – Photos of Rotary Molder and Molds for Rotary Molders........................ 16

i.

Case No. 08CV0095
Plaintiff's Suppl. Brief for 295 Motion

4.    Fourth Evidence of Common Mold Part Usage – Lexar has now admitted use of a rotary molding process for at least one supplier.........................................................................................18

III.    PLAINTIFF HAS MADE ALL REASONABLE EFFORTS REQUIRED FOR APPLICATION OF 295 BURDEN SHIFT. .........................................19

IV.    35 U.S.C. § 295 CAN BE USED BY THE COURT TO MOTIVATE A RECALCITRANT DEFENDANT. .............................................................21

CONCLUSION.................................................................................................22

ii.

Case No. 08CV0095
Plaintiff's Suppl. Brief for 295 Motion

1

# TABLE OF AUTHORITIES

2

3

<u>Statutes</u>

4

35 U.S.C. § 295....................................................... 1, 2, 8, 9, 12, 14, 19, 20, 21, 22, 23

5

<u>Cases</u>

6

7

*Kemin Foods L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*,

8

240 F.Supp.2d 963, 975-78 (S.D. Iowa 2003)........................................................ 1, 8

9

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. ITC*,

10

224 F.3d 1356, 1360 (Fed. Cir. 2000) ................................................................. 11, 21

11

12

<u>Other Authorities</u>

13

14

*House Committee on the Judiciary, Process Patents Amendments Act of*

15

*1987*, H.R. REP. NO. 100-60, at 16 (1987) ................................................................. 12

16

17

18

19

20

21

22

23

24

25

26

27

28

iii.

Case No. 08CV0095
Plaintiff's Suppl. Brief for 295 Motion

**INTRODUCTION**

As explained in greater detail below, Lexar's constantly changing production of mutually inconsistent and unreliable information with regard to the accused processes makes this case analogous to that in *Kemin Foods L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 240 F.Supp.2d 963, 975-78 (S.D. Iowa 2003), and its subsequent order at *Kemin Foods*, No. 4:02-cv-40327, Order on Plaintiff's Motion to Apply 35 U.S.C. § 295 dated August 27, 2004 (Dkt. # 201), at 32-33[1]. In the *Kemin* case, the Court applied 35 U.S.C. § 295 to shift the burden of proof when plaintiff "was left with a host of inconsistent observations, unexplained solvents, and constantly changing representations." *Id.* at 29. The depositions did nothing to clear up the discrepancies and inconsistencies. *Id.* at 29-30.

On June 30, 2008, the Court continued hearing on Plaintiff's Motion for Application of Presumption of Infringement under 35 U.S.C. § 295 ("295 motion") for approximately 10 weeks for Plaintiff to conduct discovery of the accused processes and with the Court's express encouragement for Lexar to be forthcoming with such information.

Plaintiff diligently proceeded with discovery, including interrogatories, requests for production of documents, and an FRCP 30(b)(6) deposition of Lexar's most knowledgeable person regarding the manufacturing process, designated by Lexar as Mr. Ton Nguyen ("Nguyen depo" or "30(b)(6) witness").

Defendant has delayed every single aspect of this discovery, including serving supplemental discovery responses less than 24 hours prior to the due date of this brief. The supplements include substantially rewritten responses to interrogatories describing the manufacturing process, number of units produced or imported into the U.S., identifying multiple new suppliers, and identifying new knowledgeable

---

[1] The entirety of the *Kemin* court's order is attached to the *Kramer Decl.* at Exhibit A.

1  witnesses.  Where possible, Plaintiff has incorporated some of this new discovery
2  into material portions of this brief.

3      Defendant also attempted to lure Plaintiff's representatives to Taiwan with a
4  last-minute "offer" to produce a single set of molds (out of at least three sets) *after*
5  this briefing deadline, over the Labor Day weekend, and on one week's notice.
6  Since then, Defendant served supplemental interrogatory responses showing that the
7  company whose molds were to be proffered (       actually subcontracted out
8  manufacturer to an entirely different company (            ).

9      Lexar has provided inconsistent information both denying, yet pictorially
10  admitting, the use of a "**common mold part.**"  Denial of the use of a **common mold**
11  **part** has been the basis for Lexar's assertion of non-infringement.  This indicia
12  bolsters the "substantial likelihood of infringement" prong for 35 U.S.C. § 295
13  application, while the Lexar's denial and inconsistency in the discovery responses
14  supports the "unable to so determine" portion of the "reasonable efforts" prong.

15      As this supplemental briefing will detail, this case is demonstrative of the very
16  reason that Congress implemented 35 U.S.C. § 295, and make Plaintiff's case for
17  propriety of application even stronger and more timely than it was on June 30[th.]

## FACTUAL SUMMARY

19      On June 30, 2008, the Court continued the hearing on Plaintiff's 295 Motion
20  for ten weeks, directed Plaintiff to conduct discovery of the manufacturing process
21  during that time, and required supplemental briefing to be filed by August 29th.  The
22  results of Plaintiff's further diligent efforts to obtain accurate and complete
23  manufacturing process information are as follows.

24  *Identification of Manufacturers*

25      Prior to litigation, Lexar repeatedly represented to Sorensen that it had two
26  suppliers, neither of which would Lexar identify.  At the June 30th hearing,
27  Defendant's counsel assured the Court that Lexar knew who its suppliers were.
28  *Kramer Decl.*, ¶ 5, Exhibit B.

1     On July 7th, in response to Interrogatory No. 5, Lexar identified only two

2  manufacturers -

3                                                      . *Kramer Decl.* ¶ 6,

4  Exhibit C.

5     Plaintiff identified a third manufacturer through review of approximately 1500

6  pages of documents first produced on August 20th - Fourté Design & Development,

7  located in                  . *Kramer Decl*. ¶ 7.  Lexar first confirmed the existence

8  of the third supplier,          , in its 30(b)(6) deposition on August 22nd. *Kramer Decl*.

9  ¶ 8, Exhibit D, at page 12:7-16.

10     Lexar's document production suggested the possible existence of additional

11  manufacturers, though Lexar did not confirm the existence of others at the

12  deposition. *Kramer Decl*. ¶ 9, Exhibit E.

13     In supplemental interrogatory responses served on August 28th, Lexar

14  identified even more manufacturers/suppliers –                         (no

15  address given);                      (Taiwan address);

16             (China address).  *Kramer Decl.* ¶ 10, Exhibit G.

17  *Manufacturing process information*

18     Lexar originally responded to Interrogatory No. 9 with a single step-by-step

19  manufacturing process description that did not distinguish between any of its

20  manufacturers. *Kramer Decl.*, ¶ 11, Exhibit F.

21     Lexar's August 28th supplemental response copied the same step-by-step

22  process for both      and        and changed only the         description to

23  conform to admissions made in the Nguyen depo to reflect transfer of parts from

24  mold cavity to mold cavity by machine, and use of a rotary mold (showing usage of

25  **common mold parts**).  See Exhibit G, supplemental response to Interrogatory No. 9.

26     The sources for the original Interrogatory No. 9 response are itemized in

27  response to Interrogatory No. 10.  The sources identified at 48 pages of documents,

28  and five individuals identified as working for either      or      , and all located

1    in Taiwan.  None of the individuals is subject to deposition in this case.  See *Kramer*

2    *Decl.* Exhibit F.

3        The documents identified are LEXSRDT00026-73, which consists of

4    correspondence between Lexar and its counsel, and          and          , during the

5    time period of April 2005 and July 2006.  It also includes a three-page pictorial

6    description of process with pictures (LEXSRDT00043-45) ("Storyboard") from

7    which it appears Lexar largely derived its step-by-step process for the original

8    response to Interrogatory No. 9.  *Kramer Decl.* ¶ 12, Exhibit H.

9        Lexar's belated document production on August 20th (LEXSRDT00077-1733)

10   included approximately 300 photographs of molds and molding equipment.

11   Although the photographs are without foundation or any explanation of their source,

12   Lexar's counsel represented to Plaintiff's counsel by letter dated August 27, 2008, as

13   follows:

14       Lexar has already produced photographs of the mold sets and the
15       machines used in making the Accused Product.  The photographs can be
16       found in the range LEXSRDT0001397-1773, and a video of one of the
         injection molding machines in operations can be found at
17       LEXSRDT0001774.

18   *Kramer Decl.* ¶ 13, Exhibit N.

19       *Process used by*          .  No actual manufacturing process information was

20   supplied for          until the supplemental interrogatory response of August 28th.

21   However, that response is merely a cut and paste of the internally inconsistent

22   description from          (see Section II of the Argument).  *Kramer Decl.* ¶ 14, see also

23   Exhibit F.

24       However, there is no evidence that Lexar ever contacted          regarding

25   Plaintiff's allegations of infringement, nor made any request for manufacturing

26   process information from          .  *Kramer Decl.* ¶ 15.  In fact, Lexar's deponent

27   admitted that Lexar had not contacted          .  *Kramer Decl.* Exhibit D, page 17:22-

28   18:11.

4.

Case No. 08CV0095
Plaintiff's Suppl. Brief for 295 Motion

1      Plaintiff has had no opportunity to make efforts to inquire with          directly.

2   Plaintiff cannot even subpoena a plant inspection because it is not yet known where

3      actual manufacturing facilities are located.  *Kramer Decl.* ¶ 16.

4      *Process used by*          .  Lexar produced          correspondence regarding

5   the Plaintiff's infringement allegations and responses thereto.  The second round of

6   production, contained communications from          that are inconsistent with both

7   prelitigation communication, and with Lexar's response to Interrogatory No. 9.

8   Specifically, at least two email communications confirm that          advised Lexar

9   that

10      as the original Interrogatory No. 9 response states.  *Kramer Decl.* ¶ 17.

11      The supplemental response to Interrogatory No. 9, concedes that the

12          (see *Kramer Decl.* Exhibit F), as did Lexar's 30(b)(6)

13   witness (see *Kramer Decl.* Exhibit D, page 57:4-18).

14      In pre-litigation discussion, on April 20, 2006,

15

16

17

18

19      *Kramer Decl.* ¶ 18, Exhibit J.

20      By letters dated June 28, 2006 and July 21, 2006, Lexar's counsel

21   unequivocally stated that

22

23

24

25   *Kramer Decl.* ¶ 19, Exhibit K.

26      That representation from Lexar was "categorically" false.  On October 19,

27   2005,

28

1          (LEXSRDT0001251).  *Kramer Decl*. ¶ 20, Exhibit L.

2    Again, in an email dated October 20, 2005,

3

4

5                                          *Kramer Decl*. ¶ 21, Exhibit M.

6    This                  was confirmed by Lexar's FRCP 30(b)(6) witness.  *Kramer*

7    *Decl*. Exhibit D, page 58:13-18.

8          Lexar's **supplemental** response to Interrogatory No. 9 finally admits that

9

10

11

12                                          *Kramer Decl*. Exhibit G, response to

13    Interrogatory No. 9.  *Kramer Decl*. ¶ 22.

14          Thus, Lexar has misrepresented          process to Sorensen for three years,

15    including in sworn discovery responses.

16          As of August 27th, Lexar's counsel has represented that "the mold set in

17          possession is owned by Lexar" and states that "the          mold set is

18    located in Shenzhen, China."  Lexar's counsel also represented that the Accused

19    Product is no longer being manufactured.  *Kramer Decl*. ¶ 23, Exhibit N.

20          No actual mold tooling for          has been presented for inspection, and

21    Plaintiff is unable to compel inspection of a facility in China for the reasons set forth

22    in Plaintiff's opening brief.  *Kramer Decl*. ¶ 24.

23          *Process used by*      .  Lexar produced copies of correspondence between

24    Lexar and          regarding the Plaintiff's infringement allegations and a response

25    thereto.  The information provided by          is inconsistent and misleading as

26    described in more detail in Argument Section II, below. In short,

27                                          stand in direct contradiction to

28

On August 22nd, Lexar sent a letter to Plaintiff's counsel "offering" to make the    mold tooling available for inspection in Taiwan for inspection on September 1st or 2nd.  Lexar did not specify any further details or any particular address, did not offer an inspection of any manufacturing equipment, nor any inspection of the manufacturing facility, nor availability of anyone for sworn testimony about those molds.  Plaintiff responded indicating that is was not possible to coordinate such a trip on such short notice, and made further inquiries.  *Kramer Decl.* ¶ 25 Exhibits P and Q.

Lexar's counsel has represented to Plaintiff's counsel that "[t]o the best of Lexar's current knowledge, the mold set in    possession is owned by    " and say that "the    mold set is located in Taipei."  Lexar also insists that if Sorensen does not want to go to Taiwan to inspect these molds, Sorensen must pay for the cost to ship the molds to the U.S. ***and back***, along with customs fees.  *Kramer Decl.* ¶ 26, Exhibit N.

*Discovery games*

During the June 30th hearing, Lexar's counsel confirmed to the Court that Lexar knew the Accused Products suppliers, but claimed that Lexar had not previously identified them.  Lexar waited until August 28th to provide its most recent list of manufacturers, which is now many more than the two suppliers it claimed for years prelitigation.  *Kramer Decl.* ¶ 27.

Despite timely document requests, Lexar produced only 73 pages initially.  All of the documents were initially designated as "Highly Confidential – Attorneys Eyes Only," thus delaying Plaintiff's ability to have the documents reviewed by its experts.  Lexar finally de-designated to "Confidential."  *Kramer Decl.* ¶ 28.

Less than 48 hours prior to Lexar's 30(b)(6) deposition, it produced 1500 pages of new documents, many directly related to the topics noticed for the deposition. More than 300 pages were photographs of molds and molding machines.

Furthermore, this batch of documents contained the first reference to a

California supplier,            , but identification was made too late for Plaintiff to direct

any discovery requests to            .  *Kramer Decl.* ¶ 29.

## ARGUMENT

I.    DISCOVERY HAS PRODUCED ONLY INCONSISTENT, UNRELIABLE, HEARSAY EVIDENCE OF THE ACCUSED PROCESSES.

The case of *Kemin Foods L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 240 F.Supp.2d 963, 975-78 (S.D. Iowa 2003) demonstrates the application of the 35 U.S.C. § 295 presumption of infringement under similar facts to this case.

Initially, at the preliminary injunction stage of the proceedings, the district court in *Kemin Foods* found that the burden-shifting approach of Section 295 was unavailable to the plaintiff patentholder. The court found that the plaintiff had failed to show both that it had made reasonable efforts to determine the process actually used in the production of the product and a substantial likelihood of infringement.

Approximately one year later, the plaintiff moved again for application of the presumption under Section 295.  This time the district court granted the motion and shifted the burden of proving non-infringement to the defendant.  *Kemin Foods*, No. 4:02-cv-40327, Order on Plaintiff's Motion to Apply 35 U.S.C. § 295 dated August 27, 2004 (Docket No. 201), at 32-33 (a complete copy of the Order is attached to *Kramer Decl.* as Exhibit A).  As to the first prong, the court found that the plaintiff had shown a substantial likelihood that the offending process infringed the patented process, noting that the plaintiff was not required to prove infringement, but only show a substantial likelihood of infringement.  *Id.* at 19-20.  The court also noted that **it was appropriate under Section 295 for the plaintiff to show substantial likelihood of infringement by relying on discovery it later argued was deficient**. *Id.* at 11 n.14 (emphasis added).

As for the second prong, the court noted that Section 295 only requires the plaintiff to make reasonable efforts to determine the defendant's actual process, and

1    the court found that the plaintiff in *Kemin Foods* had fulfilled that requirement. *Id.*

2    at 31-32.  The court noted that the plaintiff had been able to collect discovery

3    through documentary evidence, depositions, and site inspections and sample testing.

4    *Id.* at 23.  Because the defendant did not maintain records of its process, the only

5    documentation of defendant's process was prepared at the request of defendant's

6    attorneys for purposes of the litigation. *Id.*

7        The inspection and associated testing efforts revealed numerous discrepancies

8    between the process documentation and the process demonstrated during the

9    inspections.  As the court noted, after the inspections the plaintiff "was left with a

10   host of inconsistent observations, unexplained solvents, and constantly changing

11   representations." *Id.* at 29.  The depositions did nothing to clear up the discrepancies

12   and inconsistencies. *Id.* at 29-30.

13       The defendant argued that application of Section 295 was not warranted

14   because defendant had complied with all discovery requests and there were no

15   motions to compel allegedly missing or withheld discovery. *Id.* at 31.   The court

16   found that "**while [defendant] has complied with all of [plaintiff's] requests,**

17   **plaintiff has still been unable to discover [defendant's] actual process.   The**

18   **results of [plaintiff's] discovery have produced contradictions, errors, and**

19   **discrepancies**." *Id.* at 32 (emphasis added).

20       Accordingly, the court found that despite making reasonable efforts, the

21   plaintiff was unable to discover the actual process through discovery and thus

22   applied the burden-shifting mechanism of Section 295. *Id.* at 32-33.

23       Lexar will likely argue that it has complied with all discovery requests.

24   Though Plaintiff may disagree, that is not the point in this motion.  Plaintiff has

25   made diligent efforts to obtain the process, but is left with inconsistencies,

26   unexplained information, and constantly changing representations.

27       A.    <u>Lexar has not produced complete, reliable, or internally consistent</u>

28            <u>process information from its suppliers.</u>

1   Interrogatory No. 9 asked Lexar for its step-by-step manufacturing process for

2   the Accused Products.  Lexar's original response made no distinction between the

3   process used for its separate suppliers, contains representations that are directly

4   contrary to supplier representations to Lexar, and lacks any information at all from

5   one of the three confirmed suppliers.

6       1.    *No manufacturing process information has been provided as to*

7             *the first supplier –*

8

9   Despite Lexar's recent acknowledgement that        was one of its suppliers

10  for the Accused Product (contrary to three years of representations and its sworn

11  interrogatory responses), as of the drafting of this section on August 28th, no

12  manufacturing process information for        had yet been produced.

13  At about noon, August 28th, Lexar emailed a supplemental response to

14  Interrogatory No. 9 that purports to set forth a manufacturing process for

15  However, the supplemental response to Interrogatory No. 10 explaining the basis of

16       process description identifies no        witnesses.  See *Kramer Decl.*,

17  Exhibit G.  This would necessarily make the process description without foundation

18  in light of Lexar's 30(b)(6) witness's testimony that        designed its own mold

19  tooling for the accused product.  *See Kramer Decl.,* Exhibit D, page 13:1-3.

20  Lexar's failure to identify this manufacturer until the last minute, and

21  continued failure to identify exactly the location of        manufacturing, mold

22  tooling, or knowledgeable witnesses, is ample reason for application of 35 U.S.C. §

23  295.

24  35 U.S.C. § 295 is not just a burden shifting mechanism; it also provides the

25  trial court with "a potent weapon to use against a non-cooperative defendant."

26  *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. ITC*, 224 F.3d 1356,

27  1360 (Fed. Cir. 2000).  Essentially, it is an incredibly useful and self-executing tool

28  for preventing discovery abuses, that has been underemployed by the Courts.

For three years, Sorensen made reasonable efforts to obtain manufacturing process information from Lexar, and for three years has received naught but deception and misdirection, belated and changed responses, and overall lack of reliable information. Lexar should now bear the burden to prove non-infringement.

### 2.     Only incomplete manufacturing process information was provided as to the second supplier –

Not unlike its hiding of the existence of supplier        , Lexar has provided false information to Sorensen regarding the          manufacturing process as recently as its sworn interrogatory responses. As early as 2005,           told Lexar that

and Lexar's 30(b)(6) deponent admitted this fact.  This makes Lexar's original Interrogatory No. 9 incomplete, misleading, and possibly perjurious.

Lexar represents that it owns the          mold, which is no longer being used, yet refuses produce it in the United States to make it accessible as evidence in this case. Sorensen cannot compel production from China.  Having done all the discovery it can compel as to the          process, and still not having received the complete picture, nor having any ability to access individuals with further knowledge, Sorensen has taken sufficient reasonable efforts to satisfy 35 U.S.C. § 295.

### 3.     Vague, confusing, and facially unreliable evidence was provided as to the third supplier –        .

As discussed in more detail in Section II, the 3-page "Storyboard" process description proffered by          is rife with contradictions between the text and the photographs.

Lexar made an entirely unreasonable "offer" for Sorensen and its expert to jump on a plane on a week's notice to travel halfway around the world to view molds at an undisclosed location in Taipei during the week separating the supplemental

briefing from the hearing in this matter. There is no explanation why the molds are in Taipei, as the            company identified by Lexar as the manufacturer in response to Interrogatory No. 5 is                                    which is located in mainland China, not Taiwan. *Kramer Decl.* ¶ 30, Exhibit R.

Lexar was made fully aware of the discovery problems inherent in evidence located on mainland China due to Plaintiff's original briefing on this 295 Motion. If Lexar moves physical evidence from mainland China to Taiwan to avoid PRC legal issues, Lexar could as easily bring the molds to the United States.

35 U.S.C. § 295 was passed to help U.S. patent holders deal with the increasing number of foreign manufactures importing infringing products into the United States, and the difficulty in obtaining discovery of manufacturing processes from such foreign manufacturers:

> This presumption addresses a great difficulty a patentee may have in proving that the patented process was actually used in the manufacture of the product in question in those cases, where the manufacturer is not subject to discovery under the Federal Rules of Civil Procedure. . . . Shifting the presumption should create no substantial burden, as an accused infringer should be in a much better position to establish that the product was made by another method.

*House Committee on the Judiciary, Process Patents Amendments Act of 1987*, H.R. Rep. No. 100-60, at 16 (1987).

If Lexar has the ability to makes molds available for inspection in Taiwan, it can also make them available in the United States. Application of the 295 presumption of infringement is appropriate now and creates no substantial burden to Lexar. Lexar has the ability to bring the molds here and if the molds provide exculpatory evidence and Lexar bears the burden, Lexar will get them here.

B.   <u>There are only hearsay representations from foreign national witnesses supporting Lexar's description of the manufacturing process.</u>

Mr. Ton Nguyen was produced on August 22nd for deposition as Lexar's

30(b)(6) most knowledgeable witness regarding the manufacturing process.

Mr. Nguyen has never seen nor had the '184 patent explained to him.  See *Kramer Decl.*, Exhibit D, at page 3:15-20.  He was not involved in Lexar's investigation of Sorensen's allegations of infringement *Id.,* at 4:5-11.  He has never personally seen the manufacturing process for the Accused Products.  *Id.,* at 16:25-17:7.  Mr. Nguyen was first shown the pictures and other documents involved in the deposition two days prior to the deposition.  Three days before his deposition Mr. Nguyen knew nothing of injection molding.  *Id.,* at 65:5-8.

Thus, Lexar's description of the process is, at best, hearsay.  Lexar's supplemental responses to stated that Lexar's process description comes from nine individuals, all with listed addresses in Taiwan.[2]

## II.    DISCOVERY PROVIDES ADDITIONAL SUPPORT FOR THE "SUBSTANTIAL LIKELIHOOD OF INFRINGEMENT" PRONG OF 35 U.S.C. § 295 APPLICATION.

Evidence produced by Lexar bolsters the existence of a "substantial likelihood of infringement" of the '184 patent, specifically by providing evidence of the use of a **common mold part**.  *Supplemental Declaration of Stephen Petrie* ("*2d. Petrie Decl.*") ¶ 11.

Lexar's only articulated defense to Plaintiff's allegations of patent infringement critically relies upon Lexar's assertion that its process for making the accused products does not use any "**common mold part**."  Lexar's discovery production, however, leads directly to the conclusion that the Lexar accused processes include the use of one or more **common mold parts** for at least four different reasons described below.

Use of a **common mold part** is a claim element required for direct

_____

[2] Of the identified Lexar witnesses, the most knowledgeable has already been deposed – Mr. Nguyen – and he had no first hand knowledge of the manufacturing process.

infringement of the '184 patent.  As previously explained in the Declaration of Dr. Petrie (Docket # 31, "*First Petrie Decl.*"), it is not possible to determine with certainty whether a **common mold part** has been used in the manufacturing process solely by an examination of the accused product. Inspection of the mold tooling and equipment is required to definitively determine whether a "**common mold part**" is used.  See *First Petrie Decl.* ¶ 19-20.

Plaintiff's interrogatory number 9 propounded to Lexar, stated:  "Describe, step-by-step, the manufacturing process used for the Accused Products, from plastic resin to completed product."  In initial response to this request, Lexar produced a written description that

.  *2d. Petrie Decl.*, Exhibit 1.

The Storyboard

*2d. Petrie Decl.*, Exhibit 1.

Lexar produced approximately 1500 pages of documents and photographs purported to demonstrate aspects of the manufacturing process.  Lexar's evidence paints a very different picture of the accused processes than the purported exculpatory process description provided in Lexar's initial interrogatory responses. *2d. Petrie Decl.*, ¶ 13.

The evidence demonstrating the use of **common mold parts** can be summarized as follows: (1)

(2)

14.

1

2                                                              (3)

3

4                                                                      ; and (4)

5                                                              . *2d. Petrie*

6    *Decl.*, ¶¶ 14-28 and Exhibits 1-14.

7

8         *1.*    *First Evidence Of **Common Mold Parts** Usage By*    ̲
9                 *Photographs of Identical Mold Halves*

10        The Storyboard,

11

12

13

14

15                                      The referenced photographs, however, do

16    not back up the text. *2d. Petrie Decl.*, Exhibit 1.

17        A close look at the photographs show

18

19

20

21

22

23

24

25                                      *Petrie Decl.*, ¶¶ 16-17 and Exhibits

26    6-9.

27

28

1
*2d. Petrie Decl.*, ¶ 17

2

3
       2.    *Second Evidence Of* **Common Mold Parts** *Usage By*   –
            *Photographs of Identical Closed Molds.*

4
The Storyboard text describes

5

6

7

8

9
                *2d. Petrie Decl.*, ¶¶ 18-20 and Exhibits 2-5.

10
According to the text

11

12
                                  *2d.*

13
*Petrie Decl.*, Exhibit 1.

14
A visual comparison of the two photographs, however, reveals

15

16

17
            See *Kramer Decl.*,

18
Exhibit D, at page 45:20 – 47:22. *2d. Petrie Decl.*, ¶¶ 18-20 and Exhibits 2-5.

19
Confirmation that                      by Lexar's

20
designated FRCP 30(b)(6), deposition witness makes this a judicial admission by

21
Lexar.

22
       3.    *Third Evidence Of* **Common Mold Parts** *Usage  – Photos of*
            *Rotary Molder and Molds for Rotary Molders*

23

24
Photograph LEXSRDT0001688 *2d. Petrie Decl.*, Exhibit 12, provided by

25
Lexar  shows

26

27

28

<sup>3</sup>. *2d. Petrie Decl.*, ¶ 22.

A Rotary Molder is one designed for use with multiple injections into a series of molds held on a rotating platen not unlike a vertical version of a dining table's "Lazy Susan". In operation, the two mold halves mounted on the rotary platen connect with their facing complementary counterparts for one injection cycle, then the mold opens, and the rotary platen rotates 180 degrees, so that the parts align with the opposite complementary counterparts for the second injection cycle. At the conclusion of two injection cycles, the parts contained in the cavities formed by mating **common mold parts** with the second complementary mold part are completed, and ejected from the mold. *2d. Petrie Decl.*, ¶ 23.

*2d. Petrie Decl.*, ¶ 24.

The use of a Rotary Molder with one or two **common mold parts** is fully described and illustrated in the '184 patent at Fig. 3A-3D, drawings which illustrate the same type of four mold halves, two on a fixed platen and two on a rotary platen, depicted in *Kramer Decl.,* Exhibit I.

Lexar also produced a series of photographs of molds for the Accused Products. Lexar's counsel claims that photographs of all molds used for the Accused Products has been provided. *Kramer Decl.* ¶ 32, and Exhibit N.

The accused products molds are

*2d. Petrie Decl.*, ¶ 21.

When designing a mold to fit a rotary molder, it is necessary for mold assemblies that are too large to fully fit within the circumference of the rotary platen to have two adjacent corners chamfered, that is, to have the outside corners of the

---

<sup>3</sup> However,

1    mold cut off, to prevent interference with the tie bars (structural members of the

2    machine) during rotation of the mold.  *2d. Petrie Decl.*, ¶ 21, 26.

3    Photograph LEXSRDT0001538, *2d. Petrie Decl.*, Exhibit 14) shows e

4

5

6

7

8                                                              *2d. Petrie Decl.*, ¶ 27.

9

10                                                                        *2d. Petrie*

11   *Decl.*, ¶ 28 and Exhibits 11 and 14.

12

13

14

15

16

17

18          4.    *Fourth Evidence of **Common Mold Part** Usage - Lexar has now
                 admitted*

19

20

21          Just before this briefing was due, Lexar amended its process interrogatory

22   description for supplier

23                                  *Kramer Decl.,* Exhibit G, supplemental

24   response to Interrogatory 9.  That is an admission of

25          Lexar has managed to produce numerous additional indicia to show the

26   existence of a **common mold part** in their manufacturing processes, dramatically

27   undermining their claim of non-infringement and further bolstering a finding of

28   "substantial likelihood of infringement."

III.    PLAINTIFF HAS MADE SUFFICIENT REASONABLE EFFORTS
        REQUIRED FOR APPLICATION OF 295 BURDEN SHIFT.

Plaintiff has made sufficient reasonable efforts as required for application of 35 U.S.C. § 295.  Exhaustion of efforts is not required.

Lexar's assertions of non-infringement depend upon a denial of the use of a **common mold part**, an element of the '184 patented process.  Prelitigation requests for information only resulted in unsubstantiated, unverified, assertions from unnamed suppliers.  Discovery ordered by the Court has resulted in inconsistent, hearsay, process information, much of which could only be clarified through depositions of Chinese nationals, a form of discovery that is illegal in the PRC and unavailable under U.S. discovery laws.  Identification of manufacturers has swelled from two to six.

Lexar photographs provided have no foundation or explanation.  Sorensen cannot subpoena the Chinese or Taiwanese suppliers to explain the photographs or process.  Similarly, the Storyboard process explanation from          (*Kramer Decl.*, Exhibit H) is written in poor and ambiguous English, contains inconsistencies between photo and text, and demonstrates strong indicia of use of a **common mold part**.  Sorensen cannot subpoena the author of the document for cross-examination or further explanation, whether a citizen of the PRC, or of Taiwan.

The only mode of compelling discovery in Taiwan is via letters rogatory process.  Under the Taiwan Relations Act, U.S. citizens can compel testimony of Taiwanese citizens through the use of Letters Rogatory.
*See* http://travel.state.gov/law/info/judicial/judicial_669.html.  The use of letters rogatory is explicitly mentioned in legislative history of 35 U.S.C. § 295 as being an effort that exceeds what is required for 295, and for which section 295 is designed to alleviate the need.

Further, it should be noted that the U.S. does not officially recognize Taiwan

as an independent nation.  Instead, Taiwan is considered to be a part of the People's Republic of China (PRC).  Plaintiff's initial 295 brief (Dkt. # 31) explained that discovery in the PRC is illegal under almost all circumstances.

Lexar will argue that Sorensen must go to Taiwan to view its molds.  Lexar has not explained why the no longer used molds are in Taiwan, when production was apparently in the PRC.

Lexar identified          in its interrogatory response with a Taiwan address.  Document production showed the address as being in the PRC.

not the supplier named by Lexar, is at the Taiwan address listed.

In another example of discovery misdirection, Lexar identified a second supplier,          , with a Taiwan address.  However,          website identifies that its headquarters are in Taiwan, but its main factory is in PRC.  Further,          has a U.S. office located in Fremont, California, a city in the Northern District of California, and Lexar has admitted that it owns the molds.   Those molds are therefore within the control of Lexar.  If transport can be arranged from the PRC to another          office, why Taiwan rather than Fremont?[4]

Plaintiff has made reasonable efforts to obtain actual manufacturing process information, but has still failed to receive it.   Therefore, burden shifting is appropriate at this time.

To clarify, application of 35 U.S.C. § 295 will not stop discovery in this case, it will merely shift the burden of proof to Lexar who is obviously in a superior position to access evidence from foreign companies, but thus far has not been motivated to act on.

IV.    35 U.S.C. § 295 CAN BE USED BY THE COURT TO MOTIVATE A
       RECALCITRANT  DEFENDANT.

---

[4] While Lexar has **implied** that the          molds will be made available for inspection, thus far, Lexar has not actually offered to arrange inspection of the molds.

1

2      The Federal Circuit has recognized that Section 295 is not just a burden

3   shifting mechanism, but "also serves the needs of the court as a mechanism for

4   enforcing its processes and orders." *Nutrinova Nutrition Specialties & Food*

5   *Ingredients GmbH v. ITC*, 224 F.3d 1356, 1360 (Fed. Cir. 2000).  As the *Nutrinova*

6   court noted, '[t]he statute also has a significant punitive element.  It provides the trial

7   court with a potent weapon to use against a non-cooperative defendant." *Id.*

8      Lexar's behavior throughout discovery, not to mention the prior three years of

9   communications, was by no means cooperative.

10     Discovery has revealed systematic misrepresentations by Lexar.  For over

11  three years Lexar claimed to only have two suppliers.  These suppliers were

12  identified in litigation to both be located outside of the United States.  By the time

13  this brief was filed, a total of six suppliers/manufacturers had been identified.

14     Lexar denied under oath the existence of more than two suppliers until after

15  the window of time had passed for Plaintiff to make any independent discovery of

16  the only U.S. based supplier.

17     Lexar also materially misrespresented the process description it received from

18   .  In response to specific information, Lexar adamantly insisted that

19                                                        even though            had

20  communicated to Lexar more than once that

21     Lexar's "offer" to arrange inspection of the        molds halfway around the

22  world on a week's advance notice and after this briefing deadline again demonstrates

23  lack of cooperation, as it sought only to refer to our correspondence noting the

24  impossibility of the schedule offered as "Plaintiff's refusal to inspect."

25     Not only is application of the 35 U.S.C. § 295 presumption of infringement

26  appropriate based upon the specific factors outlined in the statute, but it would also

27  meet the Federal Circuit's recognition of use of Section 295 as a motivator to obtain

28  discovery compliance from non-cooperative defendants.

1

2                                    **CONCLUSION**

3        35 U.S.C. § 295 was enacted to address the problem faced by patent holders in

4   attempting to access manufacturing process information that was hidden not only

5   behind closed doors of factories, but behind closed doors of factories outside of the

6   jurisdiction of U.S. courts to compel entry.  The magnitude of the problem is being

7   played out before this Court in this case.

8        For almost three years, Plaintiff tried informally to confirm process

9   information with Lexar and was met with incomplete and falsely represented

10  information from unidentified suppliers.  Now that discovery has commenced,

11  Lexar's prelitigation deceptions are surfacing and question after question has been

12  raised about the process information provided.  Lexar has zero incentive to clarify

13  matters, and Plaintiff has no ability to compel answers from knowledgeable people.

14       Switching the burden of proof to Lexar at this point will ensure the highest

15  likelihood of having the best possible evidence of the actual manufacturing process

16  before the Court when a decision on whether Lexar infringes on Plaintiff's patent

17  rights is made.  Lexar will be properly motivated to use every effort to get all

18  evidence before the Court that can rebut the presumption of infringement.

19       WHEREFORE, Plaintiff respectfully renews its request for application of the

20  35 U.S.C. § 295 presumption of infringement at this time.

21

22  DATED this Friday, August 29, 2008.

23                              JENS ERIK SORENSEN, as Trustee of
                                SORENSEN RESEARCH AND DEVELOPMENT
24                              TRUST, Plaintiff

25

26                              /s/ J. Michael Kaler
27                              J. Michael Kaler, Esq.
                                Melody A. Kramer, Esq.
28                              Attorney for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I, J. Michael Kaler, declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action.  My business address is the Kaler Law Offices, 9930 Mesa Rim Road, Suite 200, San Diego, California, 92121.

On Friday, August 29, 2008 I served the following documents:

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR APPLICATION OF 35 U.S.C. § 295 PRESUMPTION OF INFRINGEMENT**

**DECLARATION OF STEPHEN PETRIE, Ph.D.**

**DECLARATION OF MELODY KRAMER**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Jared Bobrow<br>Weil, Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>jared.bobrow@weil.com | Lexar Media, Inc. | Email--Pleadings Filed with the Court via CM/ECF |
| Kevin Kudlac<br>Weil, Gotshal & Manges LLP<br>8911 Capital of Texas Highway<br>Suite 1350<br>Austin, TX 78759<br>Kevin.kudlac@weil.com | Lexar Media, Inc. | Email--Pleadings Filed with the Court via CM/ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees.  The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

1

2      ☒  (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed
           this document via the CM/ECF system for the United States District Court for the
3          Southern District of California.

4      ☐  (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address
           represented to be the correct mail address for the above noted addressee.

5

6          I declare that the foregoing is true and correct, and that this declaration was executed on

7      Friday, August 29, 2008, in San Diego, California.

8

9                                                          /s/ J. Michael Kaler

10                                                          J. Michael Kaler

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28