1

J. MICHAEL KALER, SBN 158296

2

KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200

3

San Diego, California 92121
Telephone (858) 362-3151

4

michael@kalerlaw.com

5

6

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.

7

9930 Mesa Rim Road, Suite 1600
San Diego, California 92121

8

Telephone (858) 362-3150

9

mak@kramerlawip.com

10

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND

11

DEVELOPMENT TRUST

12

13

UNITED STATES DISTRICT COURT

14

FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, | ) Case No. 08 CV 00095 JW ) ) ) **REDACTED – PUBLIC VERSION** |

17

18

19

Plaintiff

20

v.

21

LEXAR MEDIA, INC., a Delaware Corporation; and DOES 1 – 100,

22

23

Defendants.

24

and related counterclaims.

25

26

27

28

) ) **SUPPLEMENTAL**
) **DECLARATION OF STEPHEN**
) **PETRIE, Ph.D. IN SUPPORT OF**
) **PLAINTIFF'S SUPPLEMENTAL**
) **BRIEFING IN SUPPORT OF**
) **MOTION FOR APPLICATION OF**
) **35 U.S.C. § 295 PRESUMPTION OF**
) **INFRINGEMENT**
)
)
)
)
)
)

I, Stephen Petrie, Ph.D., declare:

1.    I am not a party to the present action.  I am over the age of eighteen.  I have personal knowledge of the facts contained within the following paragraphs, and could and would competently testify thereto if called as a witness in a court of law.

2.    This Declaration supplements my Declaration in Support of Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption of Infringement dated May 21, 2008 (Docket #31) (1st Declaration), and is being filed in conjunction with Plaintiff's Supplemental Briefing in support of that same motion.

3.    I incorporate by reference my qualifications and work history in the field of plastic injection molding as set forth in my 1st Declaration.

4.    As I testified previously, I have physically examined the Accused Products and determined that, the Accused Products in this case are substantially likely to include every element of Claim 1 of the '184 patented process to the extent that can be determined without access to the manufacturer's first-hand information. 1st Declaration, ¶ 15.

5.    The presence or absence of the elements of the '184 patent can be determined with a high degree of accuracy through physical and destructive examination of the Accused Product.  All of those elements that can be determined from an assessment of the Accused Product are present.  With regard to those few elements for which absolute determination is not possible without inspection of the mold tooling, the best evidence that can be gathered from examination of the Accused Products, and consideration of the commercially reasonable techniques that may be employed, shows that those elements were most reasonably present in the Accused Processes.  1st Declaration, ¶ 19.

6.    Absolute confirmation of the existence of a common mold part requires access to the actual injection molds and manufacturing equipment. Most high quality injection molded products that are made of two or more different plastic materials, such as the Accused Products, are made in molds comprising a common mold part.

1   1st Declaration, ¶ 20.

2       7.    Since the time of that declaration, I have not been given access to the

3   manufacturer's first-hand information.  Specifically, I have not been given access to

4   personally inspect any mold tooling or manufacturing equipment represented as

5   being used to manufacture the Accused Products during relevant times to this case.

6       8.    I have, however, reviewed the following second- or third-hand

7   information provided by Lexar in discovery:

8           a.    Documents    bates-numbered

9                 inclusive, (three-page narrative with nine photographs), a true

10  and correct copy of which is attached hereto as,

11          b.    Documents bates-numbered                  (photograph of a

12  dual injection injection molding machine including a rotary platen); a true and

13  correct copy of which is attached hereto as,

14          c.    Documents bates-numbered                  (more distant

15  photograph of a dual injection injection molding machine including a rotary platen);

16  a true and correct copy of which is attached hereto as,

17          d.    Documents bates-numbered                  (photograph of

18  eight mold halves on a floor, all showing chamfered corners); a true and correct copy

19  of which is attached hereto as,

20          e.    Deposition transcript of Ton Nguyen ("*Nguyen depo*").

21

22      8.    I understand that Lexar acknowledges having at least

23                                                   , in the *Nguyen*

24  *depo*.

25      9.    I have not been advised of the original source (person or company) of

26  item nos. a, b, c, or d, above, and therefore am unable to attribute my observations

27  below to any particular supplier or evaluate the credibility of these unidentified

28  sources.

3.

1    10.    However, the information supplied by Lexar identified herein is

2    internally inconsistent from a technical point of view as described below.

3    11.    The documents further support the "substantial likelihood of

4    infringement" analysis provided my 1st Declaration.    Specifically, the evidence

5    produced in discovery leads directly to the conclusion that the Lexar accused

6    processes include the use of one or more "common mold parts" for at least three

7    different reasons discussed below.

8    12.        is Lexar's "storyboarded" photograph series with captions

9    asserting a purported non-infringing process, which states that

10

11

12

13

14

15

16    13.    Lexar also produced a number of documents and photographs that are

17    purported to demonstrate aspects of the manufacturing process.    The photographs,

18    and *Nguyen depo* produced by Lexar paint a very different picture of the accused

19    processes than that apparently exculpatory process description provided in

20    14.    The evidence demonstrating the use of "common mold parts" can be

21    summarized as follows:

22    15.    In the "storyboarded" photograph series

23

24        However, those two photographs are two pictures of the same identical

25    mold part.

26    16.    As explained further below,

27

28                                                                To

                                                    Case No. 08 CV 00095 JW
                            4.

1     illustrate this better, I have attached as            close up enlargements of

2          . I have further attached as           close up enlargements of

3                  have red arrows pointing to random scratches and markings on

4     the mold faces, which illustrate that           are pictures of the same part.

5        17.    A close look at          and the enlargements in

6       show that the mold half shown in       is the same identical mold half as

7     the mold half shown in

8

9

10

11                 Since the two photographs show the same identical

12     mold half, the mold part shown in        is the "common mold part" that

13     Lexar denies is used in its accused process.

14        18.    Further, in            are asserted by Lexar to show the

15                   However, those

16     two photographs are two pictures of the same identical mold.

17        19.    The text in        describes a process where

18

19

20

21

22

23        20.    According to the text,

24

25

26     A visual comparison of the two photographs reveals that they are indisputably

27     photographs of the same identical mold. To illustrate this better, I have attached as

28             close up enlargements        I have further attached as

5.

1    close up enlargements of                              have red arrows

2    pointing to random scratches and markings on the mold faces, which illustrate that

3    are pictures of the same part.

4    21.    The  photographs  reveal

5    come in sets designed to operate in rotary platen

6    molding machines utilizing two "common mold parts" alternately connecting to the

7    set of first and second complementary mold parts as claimed in the '184 patent.

8    Those          include:

9

10

11

12    b.

13

14    22.

15

16

17

18    23.    A Rotary Molder is one designed for use with multiple injections into a

19    series of molds held on a rotating platen not unlike a vertical version of a dining

20    table's "Lazy Susan".  A Rotary Molder such as that shown in              uses one

21    or two "common mold parts" to manufacture two component (dual-layer) products

22    such as the accused Lexar products.  In operation, the two mold halves mounted on

23    the rotary platen connect with their facing complementary counterparts for one

24    injection cycle, then the mold opens, and the rotary platen rotates 180 degrees, so

25    that the parts align with the opposite complementary counterparts for the second

26    injection cycle.

27    24.    At the conclusion of two injection cycles, the parts contained in the

28    cavities formed by mating "common mold parts" with the second complementary

mold part are completed, and ejected from the mold.  The use of a Rotary Molder with one or two "common mold parts" is fully described and illustrated in the '184 patent at Fig. 3A-3D, drawings which illustrate the same type of four mold halves, two on a fixed platen and two on a rotary platen, depicted in

25.    Lexar discovery responses included a photograph of molds for the Accused Products.

26.    When designing a mold to fit a rotary molder, it is necessary for mold assemblies that are too large to fully fit within the circumference of the rotary platen to have two adjacent corners chamfered, that is, to have the outside corners of the mold cut off, to prevent interference with the tie bars (structural members of the machine) during rotation of the mold.

27.

Note the chamfered corners shown in the photograph. These chamfers are not required for molds that do not use a rotary platen molding machine.

28.    To better explain the issue of chamfered corners on rotary molds, I am attaching as exhibit 11, a sketch of a rotary platen with two mold halves mounted on the rotary platen.  As you can see on exhibit 11, the chamfered outside corners of the two molds keep the molds from extending outside area of the rotary platen, allowing clearance from the structural members (tie bars) that are on the four corners of the machine just outside the rotary platen.

7.

1

2      I declare under penalty of perjury under the laws of the United States of

3 America that the foregoing paragraphs are true and correct to the best of my own

4 personal knowledge.

5

6 DATED this Friday, August 29, 2008.

7

8                                    /s/ Stephen Petrie, Ph.D.

9                                    _____

10                                   Stephen Petrie, Ph.D., Declarant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraphs are true and correct to the best of my own personal knowledge.

DATED this Friday, August 29, 2008.

/s/ Stephen Petrie, Ph.D.

Stephen Petrie, Ph.D., Declarant

8.